1  Dennise S. Henderson (State Bar No. 208640)
   LAW OFFICE OF DENNISE HENDERSON
2  1903 21st Street
   Sacramento, CA 95811
3  Tel: (916)456-2035
   Fax: (916) 456-2027
4
   Attorney for Plaintiff
5  CALVIN MOUNTJOY

6

7              UNITED STATES DISTRICT COURT

8      EASTERN DISTRICT OF CALIFORNIA – SACRAMENTO DIVISION

9

10 CALVIN MOUNTJOY,                      CASE NO. 2:15-cv-02204-TLN-DB

11         Plaintiff,
                                         [Assigned to Hon. Troy L. Nunley, Ctrm. 2,
12     vs.                               15th Floor]

13 BANK OF AMERICA, N.A.; SETERUS,
   INC.; FEDERAL NATIONAL MORTGAGE       **SECOND AMENDED COMPLAINT FOR:**
14 ASSOCIATION,                          **(1) Violation of California Homeowner Bill
                                         of Rights**
15         Defendants.                   **(2) Fraud – False Promise**
                                         **(3) Fraud – Concealment**
16                                       **(4) Fraud – Intentional Misrepresentation**
                                         **(5) Fraud – Negligent Misrepresentation**
17                                       **(6) Negligence**
                                         **(7) Violation of Bus. & Prof. Code 17200**
18                                       **(8) Violation of Rosenthal Fair Debt
                                         Collection Practices Act**
19                                       **(9) Breach of Contract**
                                         **(10) Breach of the Implied Covenant of
20                                       Good Faith and Fair Dealing**
                                         **(11) Intentional Infliction of Emotional
21                                       Distress**
                                         **(12) Negligent Infliction of Emotional
22                                       Distress**
                                         **(13) Unlawful Foreclosure**
23

24

25

26

27

28

COMES NOW, Plaintiff CALVIN MOUNTJOY, who allege as follows for his Second Amended Complaint against Defendants and each of them:

## INTRODUCTION

1.      This action arises out of a wrongful foreclosure lawsuit in Sacramento Civil Court filed by Defendants in 2010, which the Plaintiff's settled for approximately $400,000 in 2014. However, after the settlement, Bank of America, N.A. demanded unexplained amounts of money that the parties never agreed to, refused to work on a home loan modification, refused to give a clear payoff amounts, used a Notice of Default that had been allegedly rescinded in 2012, dual tracked his loan by foreclosing and offering modifications; transferred to Defendant Severus; who ignored Plaintiff's evidence to question the amount owed and took BANA's representation as to what was owe,  transferred servicing of the loan to Seterus, Inc. who then sold the home to FNMA on the false information provided by BANA. Plaintiff has tried to negotiate with all parties to no avail.  He is now facing a kick out from his home on September 1, 2016.

2.      Plaintiff's home loan was then sold to Federal National Mortgage Association, which filed an unlawful detainer to evict him. (*See* Superior Court of Sacramento County, Case No. 15 UD 06269.)  All counsel for FNMA have represented they will not negotiate an occupancy payment while the case is pending.

## PARTIES

3.      Plaintiff CALVIN MOUNTJOY ("Plaintiff"), at all times relevant, has been a resident of the County of Sacramento in the State of California. Plaintiff is a consumer and natural person as that term is defined under 15 U.S.C. § 1602(h). Plaintiff has rights as a citizen domiciled here in California.

4.      Plaintiff does not have any real estate, mortgage, or financial expertise or background.

5.      Plaintiff, at all times relevant, owned and occupied his principal dwelling commonly known as 8647 Adamstown Way, Elk Grove, County of Sacramento, State of

1  California ("Property" or "home").

2      6.      Defendant BANK OF AMERICA, N.A. ("BANA") was, at all relevant times, a
3  corporation doing business in the State of California and was formerly known as Countrywide
4  Home Loans.

5      7.      Defendant SETERUS, INC. ("SETERUS") was, at all relevant times, a corporation
6  doing business in the State of California.

7      8.      Defendant FEDERAL NATIONAL MORTGAGE ASSOCIATION ("FNMA")
8  was, at all relevant times, a corporation doing business in the State of California.

9      9.      Plaintiffs allege, on information and belief, that said Defendants are REMICs,
10  securities trusts, equity funds, and/or collateralized debt obligations (CDO), CDO underwriters,
11  CDO trustees, hedge funds or other entities that acted as additional lenders, loan originators,
12  and/or assignees of the loan which is the subject of this action. At all times mentioned herein,
13  Defendants, and each of them, were engaged in the business of selling, servicing and/or owning,
14  or are and were the assignees of, the loan that is the subject of this Complaint.

15      10.      At all times mentioned herein, Defendants, and each of them, knowingly and
16  willfully were engaged in the common enterprise of distributing, selling, purchasing, owning
17  and/or servicing the loan that is the subject of this Complaint.

18      11.      Each of the defendants herein is responsible in some manner for the occurrences,
19  injuries, and damages herein, and the damages were directly and proximately caused by these
20  defendants' acts and omissions. Each defendant herein was the agent and co-conspirator of each of
21  the remaining defendants, and in doing the things alleged herein were acting within the course and
22  scope of their agency.

23      12.      Plaintiff is further informed and believe and on that basis allege that each of the
24  Defendants aided and abetted, encouraged, and rendered substantial assistance to the other
25  Defendants in wrongfully causing injury and damage to Plaintiff, as alleged herein. In taking
26  action to aid and abet and substantially assist the commission of these wrongful acts and other
27  wrongdoings complained of, as alleged herein, each of the Defendants acted with an awareness of

28

1 │ his/her primary wrongdoing and realized that his/her conduct would substantially assist the

2 │ accomplishment of the wrongful conduct, wrongful goals, and wrongdoing.

3 │     13.    Any applicable statutes of limitations have been tolled by the Defendants'

4 │ continuing, knowing, and active concealment of the facts alleged herein. Despite exercising

5 │ reasonable diligence, Plaintiff could not have discovered, did not discover, and was prevented

6 │ from discovering, the wrongdoing complained of herein.

7 │     14.    In the alternative, Defendants should be estopped from relying on any statutes of

8 │ limitations. Defendants have been under a continuing duty to disclose the true character, nature

9 │ and quality of their financial services and debt collection practices. Defendants owed Plaintiffs an

10 │ affirmative duty of full and fair disclosure, but knowingly failed to honor and discharge such duty.

11 │ **VENUE & JURISDICTION**

12 │     15.    The Court has jurisdiction to hear the subject matter of this complaint. The Court

13 │ also has personal jurisdiction over defendants because they do business in California.

14 │     16.    Venue is proper in this Court because some or all of the defendants are domiciled

15 │ or are headquartered in the County of Sacramento, and the injuries alleged herein occurred in this

16 │ County.

17 │ **FACTUAL ALLEGATIONS**

18 │ The 2012 Lawsuit

19 │     17.    On April 12, 2011, BANA initiated a wrongful foreclosure of Plaintiff's Property.

20 │     18.    Prior to that foreclosure, BANA demanded and took $55,000 from Plaintiff to cure

21 │ his pending foreclosure. kept that money, sold his home, and then attempted to evict him, which

22 │ caused Plaintiff to suffer a heart attack.

23 │     19.    In Plaintiff's 2012 Lawsuit for the 2011 wrongful foreclosure BANA retained

24 │ attorney Clayton Gaddis from Severson and Werson. Mr. Gaddis proceeded to litigate the case

25 │ even though BANA's Vice President, Lowell Helt, admitted before the suit was filed that they

26 │ wrongfully foreclosed.

27 │     20.    On June 5, 2012 Defendants rescinded the Notice of Default and wrongful sale.

28 │

4<br>SECOND AMENDED COMPLAINT

1   However, this was done with no notice to Plaintiffs and without any negotiation.  As suspected

2   BANA did not insure the property while Plaintiff was litigation and did not advise him the house

3   was back in his name.  BANA made no attempt to resolve the case until January 2014 Plaintiffs

4   were never noticed of this "recission" nor did Defendants negotiate a "recission" with Plaintiffs.

5   Plaintiff was led to believe Recontrust/FNMA still held title to the property.  All attempts to

6   negotiate a set off for the time Plaintiff waited for trial or settlement were always denied, and

7   Defendant was always unsuccessful in legally obtaining a set off.

8       21.     After settlement, Plaintiff received mortgage statements that told him not to pay.

9   Then he began to receive statements demanding payments for the months of time he either was not

10  in  title or not advised he had been placed back in title.  From April 12, 2011 to the time

11  Defendants allege they placed Mr. Mountjoy back in title, June 5, 2012 as well as the period of

12  June 5, 2012 to settlement January 2014 BANA was still fighting to take his house.  After

13  settlement, BANA put Mr. Mountjoy into foreclosure almost immediately upon re-servicing the

14  loan based on the past due amount improperly charged.  Also during the foreclosure period,

15  Plaintiff was suffering from almost constant physical and emotional distress caused by BANA,

16  among others.

17      22.     Plaintiff's 2012 Lawsuit against BANA was settled on January 29, 2014, at a

18  Mandatory Settlement Conference.

19      23.     During the 2012 Lawsuit, Defendants never negotiated or discussed any

20  compensation to Defendants, such as an occupancy or rental payment from Plaintiff, for the period

21  of time that Plaintiff was wrongfully without title to the Property and was being wrongfully

22  foreclosed upon.

23      25.     There was an attempt to obtain an order from the Court for occupancy fees,

24  however, new counsel who had been retained (Severson & Werson Attorney Clayton Gaddis) did

25  not follow through with that request nor seek and order or negotiate a set off at settlement.

26      24.     The Stipulated Settlement Agreement in the 2012 Lawsuit ("Settlement

27  Agreement) provided that BANA pay to Plaintiff $395,000, and that the settlement terms, which

28

1   counsel will reduce to writing, will include that "Defendants agree to assist in any + all reviews of
2   applicable modification programs concerning the subject loan."

3       25.     After the Settlement Agreement was executed, BANA's counsel prepared its own
4   settlement agreement, but included a confidentiality clause without notice to counsel, that was
5   never discussed at the settlement conference. BANA's proposed settlement agreement was never
6   executed. Thus, the valid Settlement Agreement signed on the official Sacramento County
7   settlement form by all parties and the Judge of the Superior Court, is the only one that was
8   executed by the parties to the 2012 Lawsuit.

9   EFFORTS TO MOUNTJOY THE LOAN AFTER SETTLEMENT

10       26.     After the settlement of the 2012 Lawsuit, counsel for Plaintiff began to work with
11   staff at Severson & Werson, specifically Ms. Sunoo a loan modification specialist and Mr. Clayton
12   Gaddis counsel who represented BANA agreed to the delays in putting the modification packet
13   together. Regardless of the progress and confirmation that a modification could still be submitted,
14   Mr. Wraight determined that somehow Mr. Mountjoy had taken too long to obtain a modification
15   and now they no longer had any duty to assist him.

16       27.     In addition, language in the letter from Ms. Sunoo of Severson and Werson in
17   sending the first modicatiion packet in April, 2014, there is language that attempts to limit their
18   duties without reference to the settlement agreement. There was no contact person other than
19   Severson & Werson until counsel for Plaintiff was forced to assist in obtaining a modification.  On
20   or about October 24, 014, , BANA designated a contact person named Kenneth Jackson.

21       28.     However, BANA's contact person did not have basic information about Plaintiff's
22       home loan, and was unable to assist Plaintiff in his home loan modification and other loan-
23       related issues.  He was unable to answer the basic question of the make up of the past due
24       payments and why they were included.

25       29.     Initially after settlement of the 2012 Lawsuit, BANA had even sent Plaintiff
26   correspondence in the form of statements instructing him to NOT pay any amount.  Plaintiff
27   wrongfully relied on the belief that BANA was auditing the loan to correct the errors.

28

30. After Severson & Werson refused to assist in the modification Plaintiff executed a release permitting his counsel, Dennise Henderson, to speak with third parties regarding his Property loan. In addition, BANA knew that attorney Henderson had represented Plaintiff in the 2012 Lawsuit.

31. However, on the last day the Plaintiff could request an appeal of the denial of modification, BANA's contact person was advised by BANA's outside counsel, Mr Cross and/or Mark Wraight of Severson & Werson, that Plaintiff and his counsel should only speak to Mr. Wraight. Yet, when Plaintiff's counsel tried to speak with Mr. Wraight regarding the loan modification, Mr. Wraight said that he had no reason to speak with Plaintiff's counsel.

32. In the initial call when counsel took over assisting with modification, BANA's in house counsel was concerned about the concept of this foreclosing again since they had "paid so much to correct it" In the final call to Mr. Jackson, the contact person at BANA falsely claimed that there was no release permitting him to speak with Plaintiff's counsel about the loan modification. This was a critical time; the last day to appeal. Counsel was then advised they could only speak with counsel at Severson & Werson.

33. On or about March 23, 2015, BANA's counsel, Mr. Wraight, ceased all cooperation and assistance on the loan modification, stating to Plaintiff's counsel that his law firm, Severson & Werson, would no longer assist with the modification. At that time Ms. Sunoo was working with Ms. Nygren and they were working through the delays created by both Severson and Werson in finalizing settlement and Mr. Mountjoy in obtaining the documents while starting a contentious divorce.

34. On other instances in March of 2015, Mr. Wraight of Severson & Werson falsely represented that his law firm was never involved in the process for Plaintiff's application for a loan modification. This was despite the fact that other agents of Severson & Werson, such as Elena Sunoo, had described Severson & Werson as a "conduit" between Plaintiff and BANA regarding the modification process, and Mr. Gaddis of Severson did not respond when the second modification packet was sent to him via fed ex.

35.     For example, on or about May 23, 2014, Elena Sunoo of Severson & Werson represented that Severson & Werson had not yet received a complete loan modification application from Plaintiff.

36.     On or about July 7, 2014, Mr. Wraight of Severson & Werson falsely represented that Severson & Werson had sent at least two letters to Plaintiff's counsel and received no response. However, Ms. Nygren had been working with Ms. Sunoo and BANA kept advising we had not provided all the documents required.

37.     On or about March 12, 2015, Jan Chilton of Severson & Werson represented to Plaintiff's counsel that Plaintiff should work with Mr. Wraight of Severson & Werson, and not with BANA. This representation was false and misleading, as neither BANA nor Severson & Werson intended to or did genuinely assist Plaintiff in the loan modification application process.

38.     As they have shown in pattern and practice, BANA lied and represented that Mr. Mountjoy did not provide all documents or did not sign the documents, needed to send them in a different manner, would not accept faxed documents, and then insisted that they be faxed. At deadlines to present documents, they would state they had no waiver on file and could not communicate with Plaintiff's counsel.

39.     On or about February 17, 2015, Plaintiff's home loan modification application was denied by BANA, although BANA did not list any reasons why it had been denied.

41.     The loan modification was never denied due to the judgment that Mr. Mountjoy had been awarded for damages and injuries caused by Defendants. Mr. Wraight alleged that Plaintiff was denied because he had plenty of money now that he had won the lawsuit.

42.     Defendants BANA had no intention of losing what they believed that they deserved. Since it was not accepted in a settlement agreement they just charged the same amount they were unable to obtain in a settlement agreement and avoid a jury trial.

BANA'S CONTINUED ACTIONS TOWARD WRONGFUL FORECLOSURE

40.     After all discussions were terminated by BANA and BANA's counsel regarding

1  the modification, Defendants proceeded to foreclose once again against Plaintiff. BANA had

2  rescinded the first wrongful foreclosure without notice and then used the old Notice of Default that

3  had been rescinded to start the foreclosure process.

4       41.     On or about April 14, 2015, BANA transferred servicing of the loan to Seterus,

5  knowing that it would result in foreclosure and eviction, as BANA gave erroneous and misleading

6  loan information to Seterus.

7       42.     Plaintiff's counsel informed Seterus verbally and in writing of the history of the

8  loan and the need for an audit and a modification. Specifically, Plaintiff's counsel informed

9  Seterus agents that the amounts alleged to be owed in BANA's paperwork were inaccurate.

10       43.     On or about May 18, 2015, Plaintiff's home loan was sold to Federal National

11  Mortgage Association ("FNMA" or "Fannie Mae"). FNMA is represented by Severson & Werson,

12  which is also counsel to BANA. Plaintiff's counsel eventually spoke with in house counsel at

13  Seterus who asked what Plaintiff wanted and he requested a rescission and to be made whole.

14  There was no response to this request.

15       44.     Plaintiff's door was papered with notice of foreclosure and eviction notices once

16  again by Seterus multiple times causing visits to his doctor following heart pains. This was done

17  even though Plaintiff was represented by counsel and asked that all parties only notice her office.

18       45.     For the past year Plaintiff has also been continually harassed by automated

19  collection phone calls from BANA, Seterus, and FNMA and its agents, to his home telephone and

20  cell phone;.

21       46.     Plaintiff alleges on information and belief, based upon BANA's representations,

22  that Plaintiff was in default on his home loan when Defendants attempted to collect a debt from

23  Plaintiff.

24       47.     Plaintiff's life has once again been completely disrupted by BANA's failure

25  to honor the settlement agreement with him or properly service the loan in accordance with the

26  Homeowner Bill of Rights.

27       48.     Defendants have created a scheme to deny modifications, allowing a delay that is

28

1  favorable to Defendants,;  make it impossible to obtain correct information regarding Plaintiff's

2  home loan, interfered with the attorney-client relationship, failed to provide accurate loan

3  information, gave false information and conspired to deny modification services to Plaintiff and to

4  foreclose on Plaintiff's home.

5      49.    Plaintiff continues to suffer mental and emotional stress of not knowing what is

6  happening to his home from day to day and the harassing collection calls, and the continuing

7  threat of eviction obtaining a kick out order none of the attorneys representing FNMA would

8  acknowledge any authority or even representation.

9      50.    Plaintiff is again seeing his physician on a regular basis for physical conditions

10  resulting from and exasperated by stress, including a heart condition.

11                          **FIRST CAUSE OF ACTION**

12      **(Violation of the California Homeowner Bill of Rights against BANA, Seterus)**

13      51.    Plaintiff incorporates herein by reference and reallege all of the allegations stated in

14  this Complaint.

15      52.    The California Homeowner Bill of Rights ("Act") requires a mortgage servicer to

16  provide a borrower who has requested a foreclosure prevention alternative with a single point of

17  contact from that point in time forward throughout the loan modification process and with at least

18  one direct method to reach the point of contact. (Civil Code §2923.7(a).)

19      53.    In addition, the single point of contact must remain assigned to the borrower's

20  account until all loss mitigation options have been exhausted or the loan is brought current. (Civil

21  Code §2923.7(c).)

22      54.    The mortgage servicer must ensure that the single point of contact has the

23  knowledge, responsibility and authority to: 1) communicate to the borrower the process by which

24  the borrower may apply for available foreclosure prevention alternatives; 2) coordinating receipt

25  of all necessary documents and notifying the borrower of any missing documents; 3) timely,

26  adequately and accurately inform the borrower of the current status of the foreclosure prevention

27  alternative; 4) ensure the borrower is considered for all of the foreclosure prevention options

28

1   offered by the mortgage servicer; and 5) have access to persons with the power to stop the

2   foreclosure. (Civil Code §2923.7(b).)

3       55.     The Act allows the single point of contact to be a team of personnel. However, each

4   individual in the team must have the ability and authority to perform each of the tasks set forth in

5   Civil Code §2923.7(b) to (d), and each must be knowledgeable about the borrower's status in the

6   foreclosure prevention process. (Civil Code §2923.7(e).)

7       56.     Plaintiff's counsel tried to work with BANA's designated contact person, Kenneth

8   Jackson. However, Mr. Jackson could not answer any questions, such as how Plaintiff's prior

9   payment of approximately $55,000 was applied to the loan, whether property taxes or insurance

10  had been charged to Plaintiff even when BANA was not paying those items, whether legal fees

11  had been included in the alleged home loan charges on BANA's statement to Plaintiff, and so on.

12      57.     Counsel for Plaintiff called Kenneth Jackson, who was the designated modification

13  contact person at BANA. But Mr. Jackson refused to speak with Plaintiff's counsel about the

14  modification and its denial, and instead referred Plaintiff's counsel to BANA's counsel at

15  Severson & Werson.

16      58.     Yet, when Plaintiff's counsel contacted BANA's counsel, Mr. Wraight of Severson

17  & Werson, he indicated there was no reason to speak with him and that it was up to Plaintiff's

18  counsel to contact BANA.

19      59.     Thus, BANA failed to provide a single point of contact in compliance with the Act,

20  and used the firm's allegation that they were not assisting, yet advising BANA that only Severson

21  and Werson were to be the contact at just the time that appeal rights ran out.

22      60.     The Act also provides that whenever a borrower submits any document in

23  connection with an application for a first lien loan modification or a complete application for a

24  first lien loan modification, the mortgage servicer must provide the borrower with a written

25  acknowledgement of receipt within five days of the receipt of the document(s) or completed

26  application. (Civil Code §2924.10(a).) Plaintiff did not receive such written acknowledgements of

27  receipts for each document he submitted in connection with his application for a modification.

28

1   61.     The Act provides that borrowers have 30 days to appeal the denial of a

2   modification application. (Civil Code §2923.6(f).) However, Plaintiff's counsel was prevented

3   from submitting an appeal. BANA's contact person represented that BANA was no longer

4   handling the modification or its appeal, and the only people Plaintiff's counsel could speak to was

5   Mr. Cross at Severson and Werson. Mr. Cross then told Plaintiff's counsel that the only person

6   dealing with the modification was Mark Wraight at Severson and Werson. Yet, in an email Mr.

7   Wraight wrote that he didn't know why Plaintiff's counsel was trying to contact him about this and

8   that I needed to go back to BANA. Thus, BANA did not give accurate information to Plaintiff

9   regarding any appeal of his loan modification denial.

10   62.     After servicing of the loan was transferred to Seterus, Seterus also failed to provide

11   a contact person required by Civil Code §2923.7(b).

12   63.     Seterus also failed to provide Plaintiff with a written acknowledgement of receipt

13   within five days of the receipt of the document(s) or completed application. (Civil Code

14   §2924.10(a).)

15   64.     Defendants' violations of the Act were intentional or reckless, or resulted from

16   willful misconduct. For example, Defendants knew that Plaintiff's counsel was authorized to

17   speak on his behalf about Plaintiff's home loan, yet claimed that she was not authorized.

18   **SECOND CAUSE OF ACTION**

19   **(Fraud – False Promise)**

20   65.     Plaintiff incorporates herein by reference and realleges the allegations stated in

21   this Complaint.

22   66.     Defendants have special knowledge and expertise regarding mortgage and

23   financial lending that they have used to manipulate the Plaintiff. Furthermore, Defendants have

24   records relating to Plaintiff's loan which they have never provided to Plaintiff, such as records

25   showing how Plaintiff's previous payments had been applied to his loan and records of telephone

26   conversations.

27   67.     BANA agreed to settle the case and did not successfully negotiate set off payments.

28

1   Rather than lose that they charged Plaintiff and threatened him with foreclosure if he didn't pay

2   for months they had no authority to demand.   After Severson & Werson refused to assist in the

3   modification, counsel for Plaintiff contacted BANA.   During an initial telephone call, Plaintiffs

4   counsel was finally able to oreach BANA's in-house counsel.   After being told that this home was

5   at risk to foreclose and we still had not received accurated information, BANA's in house counsel,

6   promised Plaintiff's counsel that there would be no foreclosure on Plaintiff's Property until

7   Defendants provided Plaintiff and his counsel with an accurate and complete accounting of his

8   entire loan, why he was being charged amounts he did not understand and BANA could not

9   explain,  including how his previous payment of about $55,000 had been applied to the loan;

10      68.    BANA did not intend to perform this promise when it was made.

11      69.    BANA intended that Plaintiff rely on this promise.

12      70.     Plaintiff reasonably relied on the representation and waited for the promised

13   accounting from BANA.

14      71.    BANA did not perform the promised act of providing Plaintiff with a full and

15   accurate accounting of his loan, stopped servicing the loan, transferred servicing to Seterus, and

16   conspired with the other defendants to foreclose on the Property.

17      72.    Plaintiff's reliance on BANA's false promise was a substantial factor in causing

18   his harm.

19                        **THIRD CAUSE OF ACTION**

20                            **(Fraud – Concealment)**

21      73.    Plaintiff incorporates herein by reference and reallege all of the allegations stated in

22   this Complaint.

23      74.    BANA disclosed some facts to Plaintiff but intentionally failed to disclose other

24   facts, making the disclosure deceptive. For example, BANA failed to disclose: how Plaintiff's

25   previous payment of approximately $55,000 was applied to his home loan, the fact that BANA

26   always intended to add to Plaintiff's home loan an occupancy or rental fee for the time that he was

27   wrongfully taken off title from the Property and was facing eviction, the contact information of

28

1  personnel at BANA who actually had helpful knowledge about Plaintiff's home loan (as BANA's

2  designated contact person did not have such knowledge), and that BANA was going to transfer

3  servicing of the loan to Seterus and stop assisting Plaintiff with any modification.

4      75.     BANA intentionally failed to disclose certain facts that were known only to it and

5  that Plaintiff could not have discovered.

6      76.     Plaintiff did not know of the concealed facts, nor that BANA had every intent to

7  make Plaintiff pay for the amount of time he waited for settlement or trial.

8      77.     BANA intended to deceive Plaintiff by concealing the facts.

9      78.     That had the omitted information been disclosed, Plaintiff reasonably would have

10 behaved differently. For example, Plaintiff would have filed legal action sooner and prior to the

11 foreclosure of his home.

12     79.     Plaintiff was harmed, in that the information was provided to Seterus and they

13 foreclosed causing emotional damage, financial damages, and loss of time.

14     80.     BANA's concealment was a substantial factor in causing Plaintiff's harm.

15                              **FOURTH CAUSE OF ACTION**

16                         **(Fraud – Intentional Misrepresentation)**

17     81.     Plaintiff incorporates herein by reference and reallege all of the allegations stated in

18 this Complaint.

19     82.     BANA's, Seterus', FNMA's agents and employees represented to Plaintiff that:

20     (a) BANA's home loan modification agents, including the designated contact person

21 Kenneth Jackson, were not authorized to speak to Plaintiff's counsel;

22     (b) Plaintiff's counsel could only speak to BANA's counsel at Severson & Werson about

23 his loan modification application;

24     (c) Plaintiff was more than $100,000 delinquent on his loan with no explanation;

25     (d) BANA's counsel would assist in any and all reviews of Plaintiff's loan;

26     (e) Defendants had not received Plaintiff's complete loan modification application;

27     (f) BANA would provide an accurate accounting of what was owed and how the months

28

1   that Plaintiff was wrongfully taken out of title were dealt with.

2       83.    Defendants have sent billing statements to Plaintiff that knowingly include months

3   when the home was not in Plaintiff's name, which erroneously led Plaintiff to believe he owes

4   money, as well as representing the incorrect amount due.

5       84.    To date, Defendants have refused to provide an accurate accounting to Plaintiff of

6   the amount he owes on his home loan.

7       85.    BANA also ceased assisting Plaintiff in the loan modification process.

8                           **FIFTH CAUSE OF ACTION**

9                       **(Fraud – Negligent Misrepresentation)**

10      86.    Plaintiff incorporates herein by reference and reallege all of the allegations stated in

11  this Complaint.

12      87.    Defendants have negligently misrepresented to Plaintiff the amount of money

13  that he owes to BANA on his home loan.

14      88.    Defendants have negligently represented to Plaintiff the amount of money that he

15  owes by sending him billing statements in the mail and over the phone via their agents.

16      89.    BANA took no care in servicing the loan, reporting to credit bureaus, and to

17  Seterus.

18                          **SIXTH CAUSE OF ACTION**

19                              **(Negligence)**

20      90.    Plaintiffs incorporate herein by reference and reallege all of the allegations stated in

21  this Complaint.

22      91.    Defendants have a duty to service the loan truthfully and accurately and to not take

23  advantage of Plaintiff as a homeowner and borrower in the lending process.

24      92.    Defendants have breached their duty to Plaintiff by misrepresenting the amount of

25  money he owed on his loan.

26      93.    Defendants have breached their duty by sending Plaintiff a notice of trustee sale.

27  In-house counsel for BANA assured Plaintiff's counsel that they would not foreclose until

28

1   Defendants provided an accurate accounting of what was owed and how the months out of title
2   would be treated.

3       94.     After being advised that they would not foreclose, Plaintiff relied on the
4   representation and waited for answers from BANA.

5       95.     Plaintiff submitted documents timely and accurately to BANA, yet was told several
6   times that BANA had not received all documents.

7       96.     BANA has a pattern and practice of telling homeowners and borrowers that
8   modification documents were not received, not signed, or not complete in order to deny
9   modification.

10      97.     After finding his door papered again with false notices of notice of default and
11  foreclosure.

12      98.     As a result, Plaintiff has suffered continuing and ongoing severe emotional and
13  physical distress as a result of Defendant's negligent actions.

14                      **SEVENTH CAUSE OF ACTION**

15          **(Violation of Bus. & Prof. Code § 17200 against All Defendants)**

16      99.     Plaintiff incorporates herein by reference and reallege all of the allegations stated in
17  this Complaint.

18      100.    Defendants have taken advantage of Plaintiff's status as a consumer and sent him
19  bills that he did not understand nor would BANA or its agents explain.

20      101.    Defendants, having knowledge of the prior lawsuit, settlement and damages, have
21  been negligent in processing, billing and servicing the loan, demanding amounts not due by the
22  Plaintiff.

23      102.    Defendants have used their special knowledge in mortgage and finance to deceive
24  Plaintiff about the amount of money he owes on his home loan.

25                      **EIGHTH CAUSE OF ACTION**

26      **(Violation of the Rosenthal Fair Debt Collection Practices Act against BANA, Seterus)**

27      103.    Plaintiff incorporates herein by reference and reallege all of the allegations stated in

28

16
SECOND AMENDED COMPLAINT

1 | this Complaint.

2 |     104.    Plaintiff is a consumer within the meaning of the Rosenthal Fair Debt Collection
3 | Practices Act ("RFDCPA").

4 |     105.    Defendants are debt collectors who, at all relevant times, were collecting a debt.

5 |     106.    At the time that Defendants acquired the alleged debt, Defendants were asserting
6 | that Plaintiff was in default. Thus, on information and belief, Plaintiff was in default on the debt at
7 | the time it was obtained by Defendants.

8 |     107.    Defendants engaged in acts or omissions prohibited by the Act, including placing
9 | calls whose natural consequence is to harass, specifically by placing repeated calls or repeatedly
10 | engaging Plaintiff in conversation with the intent to annoy, abuse, or harass. For example, from
11 | the period of March 2015 to present, Plaintiff received notices, letters, calls from BANA, Seterus
12 | and FNMA at various hours of the day or night. (*See* 15 U.S.C. § 1692d)  Even though the contact
13 | person Mr. Jackson had authority and Plaintiff requested he deal directly with counsel he called
14 | and sent messages to Plaintiff.

15 |     108.    Upon information and belief, Defendants also made defamatory statements about
16 | Plaintiff to credit reporting agencies. For example, Plaintiff's credit report still shows the wrongful
17 | prior foreclosure and evictions related to the 2012 Lawsuit. Plaintiff's credit report also shows that
18 | he is delinquent on the Property, even though Defendants have never provided validation of the
19 | alleged delinquency.

20 |     109.    Upon information and belief, these wrongful debt collection practices were
21 | conducted by Defendants independent from the foreclosure of the Property.

22 |     110.    The federal Fair Debt Collection Practices Act ("FDCPA"), which is incorporated
23 | into the California RFDCPA (Civ. Code § 1788.17), specifically prohibits "[t]he false
24 | representation of ... the character, amount or legal status of any debt" (15 U.S.C. § 1692e, subd.
25 | (2)(A)).) Yet, Defendants have continuously falsely represented the amounts of money that they
26 | allege Plaintiff owes on his home loan.

27 |     111.    The FDCPA broadly prohibits "[t]he use of any false representation or deceptive

28 |

1  means to collect or attempt to collect any debt ..." (15 U.S.C. § 1692e, subd. (10)). Defendants

2  falsely represented that they would not take the action of foreclosure until they provided a full

3  accounting of the alleged debt to Plaintiff. However, Defendants never provided a full accounting

4  of the alleged debt to Plaintiff before attempting to collect the alleged debt from Plaintiff.

5      112.    Plaintiff was harmed by Defendants' various violations of the RFDCPA.

6                              **NINTH CAUSE OF ACTION**

7                          **(Breach of Contract against BANA)**

8      113.    Plaintiff incorporates herein by reference and reallege all of the allegations stated in

9  this Complaint.

10     114.    Despite Plaintiff's performance, BANA failed to adhere to various provisions of

11  the Settlement Agreement, a true and correct copy of which is attached as **Exhibit A**.

12     115.    Plaintiff performed all conditions required to be performed under the terms of the

13  Settlement Agreement, except those conditions which were prevented as a result of the actions of

14  Defendants.

15     116.    In breach of the Settlement Agreement, BANA committed the following acts or

16  omissions:

17         a)  BANA did not make good faith efforts to remove derogatory credit reporting;

18         b)  BANA did not assist in reviews of applicable modification programs or loan

19             modification applications;

20         c)  BANA did not correct any related cases and reporting to credit reporting agencies.

21         d)  BANA charged Plaintiff for amounts that they knew were not valid

22     117.    As a result of Defendant's breaches, Plaintiff suffered the following types of harm:

23  a second foreclosure of his home, poor credit score and profile, severe physical and emotional

24  distress.

25                              **TENTH CAUSE OF ACTION**

26     **(Breach of the Implied Covenant of Good Faith & Fair Dealing against BANA)**

27     118.    Plaintiff incorporates herein by reference and reallege all of the allegations stated in

28

1 | this Complaint.

2 |     119.    As a result of the contractual relationship between Plaintiff and BANA, BANA

3 | owed a duty to act in good faith and deal fairly in regards to the performance of the Settlement

4 | Agreement and to do everything that the Settlement Agreement presupposes that each party will

5 | do in accomplishing its purpose and afford the respective parties the benefits of the agreement.

6 |     120.    Plaintiff has performed all terms required of him under the Settlement Agreement.

7 |     121.    Defendant unfairly interfered with Plaintiff's right to receive the benefits of the

8 | contract. For example, BANA breached the implied covenant of good faith and fair dealing by the

9 | following actions which, while not explicitly prohibited by the Settlement Agreement, frustrated

10 | the Settlement Agreement's purposes:

11 |     122.    Plaintiff was harmed by Defendant's conduct.

12 |     123.    Defendant's conduct was a substantial factor in causing Plaintiff's harm.

13 | **ELEVENTH CAUSE OF ACTION**

14 | **(Intentional Infliction of Emotional Distress against All Defendants)**

15 |     124.    Plaintiff incorporates herein by reference and reallege all of the allegations stated in

16 | this Complaint.

17 |     125.    Defendants' conduct was outrageous. Defendants knew that Plaintiff had already

18 | suffered a previous heart attack due to a wrongful foreclosure and eviction in the related 2012

19 | Lawsuit. Defendants also knew, based on Plaintiff's counsel's communications with them, that

20 | Plaintiff was suffering from a similar level of both physical and emotional distress due to the

21 | present foreclosure and eviction.

22 |     126.    Defendants intended to cause Plaintiff emotional distress.

23 |     127.    Defendants also acted with reckless disregard of the probability that Plaintiff

24 | would suffer emotional distress.

25 |     128.    Plaintiff suffered severe physical and emotional distress.

26 |     129.    Defendants' conduct was a substantial factor in causing Plaintiff's severe emotional

27 | distress.

28 |

1    130.    Defendants, and each of them, acting individually and/or in concert as part of a

2  greater conspiracy as hereinabove set forth, acted with oppression, fraud and malice and a willful

3  and conscious disregard Plaintiff's rights.

4                              **TWELTH CAUSE OF ACTION**

5           **(Negligent Infliction of Emotional Distress against All Defendants)**

6    131.    Plaintiff incorporates herein by reference and reallege all of the allegations stated in

7  this Complaint.

8    132.    Defendant BANA had a pre-existing relationship with Plaintiff due to the

9  Settlement Agreement to which they are parties. Seterus owed duties to Plaintiff under statutes,

10  such as the Homeowner Bill of Rights. FNMA was also represented by Severson & Werson,

11  which was BANA's counsel, and knew that the foreclosure was wrongful, yet proceeded anyway.

12    133.    Defendants negligently caused injury to Plaintiff, as described in the incorporated

13  allegations in this complaint.

14    134.    Plaintiff suffered serious emotional distress.

15    135.    Defendants' conduct was a substantial factor in causing Plaintiff's serious

16  emotional distress.

17    136.    Defendants, and each of them, acted individually and in concert as part of a greater

18  conspiracy as hereinabove set forth.

19    137.    Defendants were aware of the probable dangerous consequences of their conduct,

20  and willfully and deliberately failed to avoid those consequences.

21                          **THIRTEENTH CAUSE OF ACTION**

22              **UNLAWFUL FORECLOSURE AND EVICTION (Seterus; FNMA)**

23

24    138.    Plaintiff incorporates herein by reference and reallege all of the allegations stated in

25  this Complaint.

26    139.    Defendant, Seterus accepted the transfer of the servicing of the loan from BANA;

27    140.    Defendant, BANA knew the information that was being provided to Seterus was in

28

1 | accurate and was set up to foreclose by BANA.

2      141.    Seterus received verbal and written information and documents from Plaintiff's
3 | counsel advising them the past due amount was unlawful;

4      142.    Seterus in house counsel asked what Plaintiff wanted and counsel for Plaintiff
5 | requested a rescission of the wrongful sale and to make Mr. Mountjoy whole.   In house counsel
6 | never responded back to Plaintiff's counsel, and moved to evict.

7      143.    Defendant FNMA acting as agent for Seterus, noticed Plaintiff of the eviction, were
8 | advised of the unlawful aspect of it and then delayed proceeding for a year after an eviction.  This
9 | led Plaintiff to believe and rely on the belief that Seterus and/or at a minimum FNMA was not
10 | going to move forward with an eviction since they waited so long to decide to file a summary
11 | judgment.

12      144.    The Notice of Default used to sell the home was from 2011 an was rescinded in
13 | 2012.  There was not another NOD served on Plaintiff.  The Notice of sale references this NOD
14 | which would not give Seterus or FNMA the right to sell/buy the property and evict Plaintiff.

15      145.    The eviction was not litigated in unlawful detainer Court.  Counsel objected to the
16 | court taking action, in that the property was at issue in this federal case.  The Commissioner took
17 | it under submission and then ruled in favor of FNMA – represented by Wolf Law Firm.

18      146.    Plaintiff's counsel attempted to negotiate an occupancy payment since the eviction
19 | proceeding.  All counsel have said they don't have authority to negotiate an occupancy payment.

20      147.    Plaintiff is now facing a kick out order September 1, 2016, with no place to go, able
21 | to make payments, heart disease and increasing stress and anxiety.

22

23                                    **PRAYER**

24      **WHEREFORE**, Plaintiff prays for relief against Defendants, and each of them as
25 | follows:

26      1.    For a declaration of the rights and duties of the parties;

27      2.    For compensatory, special, and general damages in an amount according to proof at

28

1 | trial but not less than $8,,000,000;

2 |     3.    For punitive damages;

3 |     4.    Pursuant to Business and Professions Code § 17203, that all Defendants, their

4 | successors, agents, representatives, employees, and all persons who act in concert with them

5 | permanently enjoined from committing any acts of unfair competition in violation of § 17200,

6 | including but not limited to the violations alleged herein;

7 |     5.    For civil penalties pursuant to statute, restitution, injunctive relief;

8 |     6.    For reasonable attorney's fee according to proof;

9 |     5.    For costs of suit and for such other and further relief as the court deems just and

10 | proper.

## TRIAL BY JURY

Trial by jury is demanded on all such issues so triable.

DATED: August 30, 2016

By: _____
Dennise Henderson, Esq.
Attorney for Plaintiff Calvin Mountjoy

SECOND AMENDED COMPLAINT