1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                    EASTERN DISTRICT OF CALIFORNIA

10

11   CALVIN MOUNTJOY,                          No.  2:15-cv-02204-TLN-DB

12              Plaintiff,

13        v.                                   **ORDER GRANTING IN PART AND
                                               DENYING IN PART DEFENDANTS'**
14                                             **MOTIONS TO DISMISS**

     BANK OF AMERICA N.A., SETERUS,
15   INC., FEDERAL NATIONAL
     MORTGAGE ASSOCIATION, and
16   RECONTRUST,

17              Defendants.

18

19        This matter is before the Court pursuant to Defendants Bank of America, N.A., Federal

20   National Mortgage Associations, and ReConTrust Company, N.A.'s Motion to Dismiss (ECF No.

21   29) and Defendant Seterus Inc.'s separate Motion to Dismiss (ECF No. 31).  Plaintiff Calvin

22   Mountjoy ("Plaintiff") opposes both motions.  (ECF Nos. 35 & 36.)  Having reviewed the

23   briefing filed by both parties and for the reasons set forth below, the Court hereby GRANTS in

24   part and DENIES in part Defendants' Motions to Dismiss.

25   ///

26   ///

27   ///

28   ///

                                               1

## I. FACTUAL AND PROCEDURAL BACKGROUND

This action involves real property located at 8647 Adamstown Way, Elk Grove, California. (Sec. Amended Compl., ECF No. 26 ¶ 5.) In or around 2012, Plaintiff filed a lawsuit ("*Mountjoy I*") in the Superior Court of California, County of Sacramento against Defendant Bank of America, N.A.'s ("BANA") for wrongful foreclosure on Plaintiff's home loan. (ECF No. 30-1 at 1.)[1] On June 5, 2012, BANA rescinded the Notice of Default and wrongful sale. (ECF No. 26 ¶ 20.) Plaintiff alleges BANA did not inform Plaintiff that the house was back in his name at the time it rescinded the Notice. (ECF No. 26 ¶ 20.) *Mountjoy I* ended in a settlement between the parties on January 29, 2014. (ECF No. 26 ¶ 22.) The parties agreed BANA would pay Plaintiff $395,000. (ECF No. 26 ¶ 24.) Plaintiff alleges the settlement agreement required Defendants to assist in any and all reviews of loan modification applications. (ECF No. 26 ¶ 24.) Plaintiff further alleges BANA's counsel prepared its own settlement agreement and included a confidentiality clause without informing Plaintiff's counsel. (ECF No. 26 ¶ 25.)

Sometime thereafter, Plaintiff began working with Severson & Werson, BANA's previous counsel, to complete and submit a completed loan modification application. (ECF No. 26 ¶ 26.) Plaintiff alleges there was no contact person other than Severson & Werson until October 24, 2014, when BANA designated Kenneth Jackson as the contact person. (ECF No. 26 ¶ 27.) However, Plaintiff alleges that Defendant BANA's counsel, Mr. Mark Wraight, stated that Plaintiff and his counsel should only communicate with Mr. Wraight. (ECF No. 26 ¶ 31.) "Yet, when Plaintiff's counsel tried to speak with Mr. Wraight regarding the loan modification, Mr. Wraight said that he had no reason to speak with Plaintiff's counsel." (ECF No. 26 ¶ 31.)

---

[1] BANA requests the Court take judicial notice of: (1) Plaintiff's Complaint in *Mountjoy I* filed on January 9, 2012; (2) the Dismissal with Prejudice of *Mountjoy I*; (3) the Trustee's Deed Upon Sale recorded July 6, 2015, as Book No. 20150706, Page No. 0091 in the Sacramento County Official Records; (4) Order on the Motion for Summary Judgment in the Unlawful Detainer action; and (5) a February 17, 2015, letter from Bank of America sent to Plaintiff declining the loan ending in 0959. (Req. for Judicial Notice, ECF No. 30.) Under Federal Rule of Evidence § 201 a court can take judicial notice of a document when the subject "can be accurately and readily determined from the sources whose accuracy cannot reasonably be questioned." For the reasons stated in Defendants' request and noting no opposition from Plaintiff, the Court GRANTS Defendants' request as to numbers one through four, and takes judicial notice of the attached exhibits pursuant to Federal Rule of Evidence § 201 (ECF Nos. 30-1–30-4). However, the letter from Bank of America is not from a source whose "accuracy cannot reasonably be questioned." Therefore, Defendants' Request for Judicial Notice (ECF No. 30) is DENIED as to number five.

Plaintiff alleges another BANA contact person refused to speak with Plaintiff's attorney, claiming there was no release on file.  (ECF No. 26 ¶ 32.)  In communications in March 2015, Plaintiff alleges Severson & Werson falsely claimed it had never been a part of the modification process.  (ECF No. 26 ¶ 34.)  Despite these statements, Plaintiff alleges that on or about March 12, 2015, Jan Chilton of Severson & Werson represented to Plaintiff's counsel that he should work with Mr. Wraight of Severson & Werson and not BANA to achieve a modification.  (ECF No. 26 ¶ 37.)  On March 23, 2015, Plaintiff alleges Severson & Werson ceased all communication and cooperation and informed Plaintiff's counsel it would no longer assist in the modification.  (ECF No. 26 ¶ 33.)

On July 7, 2014, Plaintiff alleges Severson & Werson falsely represented that it had sent two letters to Plaintiff regarding his modification and received no reply.  (ECF No. 26 ¶ 36.)  Plaintiff alleges BANA lied and represented to Plaintiff that he had not provided all the necessary documents or signed the documents.  (ECF No. 26 ¶ 38.)  When Plaintiff's deadlines approached, he alleges BANA would state they had no waiver on file and would not discuss the modification with Plaintiff's attorney.  (ECF No. 26 ¶ 38.)  Plaintiff alleges his home loan modification was denied on February 17, 2015, without listing the reasons for the denial.  (ECF No. 26 ¶ 39.)  Mr. Wraight stated Plaintiff was denied because he had plenty of money, having received a settlement in the first lawsuit.  (ECF No. 26 ¶ 41 at 8.)[2]

Plaintiff further alleges that sometime after the settlement of *Mountjoy I*, BANA sent him statements instructing him not to make payments and that Plaintiff relied on the belief that BANA was correcting the errors.  (ECF No. 26 ¶ 29.)  Plaintiff then began to receive statements demanding payments "for the months of time he either was not in title or not advised he had been placed back in to title."  (ECF No. 26 ¶ 21.)  During settlement negotiations, the parties did not discuss compensation such as occupancy or rental payment from Plaintiff for the period of time of the *Mountjoy I* lawsuit.  (ECF No. 26 ¶ 23.)

After Plaintiff was denied, Plaintiff alleges BANA reinstated foreclosure proceedings

---

[2]    Plaintiff repeats some paragraph numbers in his complaint.  In order to differentiate between those paragraphs, the Court will designate the paragraph number along with the page on which the allegation is found.

using the same Notice of Default used in the first foreclosure proceedings even though it had been rescinded after the first foreclosure was found unlawful.  (ECF No. 26 ¶ 40.)  BANA transferred the loan to Defendant Seterus Inc. ("Seterus") on April 14, 2015.  (ECF No. 26 ¶ 41 at 9.)  Plaintiff alleges BANA gave Seterus erroneous and misleading loan information knowing Seterus would use the information to foreclose on the loan and evict Plaintiff.  (ECF No. 26 ¶ 41 at 9.)  Federal National Mortgage Association ("Fannie Mae") bought Plaintiff's home at the foreclosure sale and a trustee's deed upon sale was recorded on June 26, 2015.  (ECF No. 30-3 at 2.)

Following the sale to Fannie Mae, Plaintiff alleges his door was papered with foreclosure and eviction notices.  (ECF No. 26 ¶ 44.)  As a result, Plaintiff had to go to the doctor on multiple occasions for heart pains.  (ECF No. 26 ¶ 44.)  Plaintiff also alleges the parties knew Plaintiff was represented by counsel and that Plaintiff had asked to have all notices sent to counsel.  (ECF No. 26 ¶ 44.)  In addition to the paper notices, Plaintiff alleges BANA, Seterus, and Fannie Mae continually harassed him through automated collection calls to his home phone and cell phone.  (ECF No. 26 ¶ 45.)  Plaintiff believes he was in default on his home loan when Defendants attempted to collect a debt.  (ECF No. 26 ¶ 46.)

Plaintiff filed his original complaint on October 22, 2015.  (ECF No. 1.)  BANA filed a motion to dismiss on October 29, 2015.  (ECF No. 5.)  In response, Plaintiff filed an amended complaint as a matter of right under Federal Rule of Civil Procedure 15.  (ECF No. 10.)  Defendants filed a second Motion to Dismiss on December 7, 2015.  (ECF No. 13.)  The Court dismissed Plaintiff's claims for violation of the California Homeowners Bill of Rights, fraud, and violation of Rosenthal Fair Debt Collection Practices Act with leave to amend and in all other aspects denied the motion.  (ECF No. 21.)  Plaintiff filed his Second Amended Complaint ("SAC") on August 30, 2016, amending the dismissed claims and adding six new claims.  (ECF No. 26.)  Defendants BANA and Seterus filed two separate motions to dismiss on September 15, 2016, and September 20, 2016, respectively.  (ECF No. 29 & 31.)

## II.    STANDARD OF LAW

A motion to dismiss for failure to state a claim under Rule 12(b)(6) tests the legal sufficiency of a complaint.  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  Federal Rule of

4

Civil Procedure 8(a) requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *See Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). Under notice pleading in federal court, the complaint must "give the defendant fair notice of what the claim . . . is and the grounds upon which it rests." *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations omitted). "This simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002).

On a motion to dismiss, the factual allegations of the complaint must be accepted as true. *Cruz v. Beto*, 405 U.S. 319, 322 (1972). A court is bound to give plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint. *Retail Clerks Int'l Ass'n v. Schermerhorn*, 373 U.S. 746, 753 n.6 (1963). A plaintiff need not allege "'specific facts' beyond those necessary to state his claim and the grounds showing entitlement to relief." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. 544, 556 (2007)).

Nevertheless, a court "need not assume the truth of legal conclusions cast in the form of factual allegations." *United States ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir. 1986). While Rule 8(a) does not require detailed factual allegations, "it demands more than an unadorned, the defendant–unlawfully–harmed–me accusation." *Iqbal*, 556 U.S. at 678. A pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Moreover, it is inappropriate to assume that the plaintiff "can prove facts that it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged[.]" *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

Ultimately, a court may not dismiss a complaint in which the plaintiff has alleged "enough facts to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 697 (quoting

*Twombly*, 550 U.S. at 570). Only where a plaintiff has failed to "nudge[] [his or her] claims . . . across the line from conceivable to plausible[,]" is the complaint properly dismissed. *Id.* at 680. While the plausibility requirement is not akin to a probability requirement, it demands more than "a sheer possibility that a defendant has acted unlawfully." *Id.* at 678. This plausibility inquiry is "a context–specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

If a complaint fails to state a plausible claim, "'[a] district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts.'" *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc) (quoting *Doe v. United States*, 58 F.3d 484, 497 (9th Cir. 1995)); *see also Gardner v. Marino*, 563 F.3d 981, 990 (9th Cir. 2009) (finding no abuse of discretion in denying leave to amend when amendment would be futile). Although a district court should freely give leave to amend when justice so requires under Rule 15(a)(2), "the court's discretion to deny such leave is 'particularly broad' where the plaintiff has previously amended its complaint[.]" *Ecological Rights Found. v. Pac. Gas & Elec. Co.*, 713 F.3d 502, 520 (9th Cir. 2013) (quoting *Miller v. Yokohama Tire Corp.*, 358 F.3d 616, 622 (9th Cir. 2004)).

### III.   ANALYSIS

The motions proceed in two separate sections below. However, one overarching concern merits discussion. The Court notes the oppositions supplied by Plaintiff are replete in their coverage of the issues raised in both BANA's and Seterus's motions to dismiss. Plaintiff seemingly picked and chose the arguments upon which he would respond and completely ignored any remaining arguments. The Court is placed in a tenuous position of determining just how much the Court will do Plaintiff's work for him and to what extent Plaintiff has waived or even abandoned issues to which he does not respond. *See Stitching Pensioenfonds ABP v. Countrywide Financial Corp.*, 802 F. Supp. 2d 1125, 1132 (C.D. Cal. 2011) ("Failure to respond in an opposition brief to an argument put forward in an opening brief constitutes waiver or abandonment in regard to the uncontested issue."). Due to the diverse nature of the claims and the multiple motions at issue, the Court opts to decide whether an uncontested issue is waived on

an individual basis.  Accordingly, the Court turns to an analysis of the individual motions and claims.

A.  BANA's Motion to Dismiss

i.  *Res Judicata: Unlawful Detainer Action*

BANA avers all Plaintiff's claims are barred under the doctrine of res judicata by a prior unlawful detainer ("UD") action on the given property.  (ECF No. 29-1 at 11.)  Plaintiff contends the UD judgment does not bar the claims because they are not directly related to irregularities in the foreclosure sale.  (ECF No. 35 at 6.)

Generally, unlawful detainer actions have limited res judicata effect.  *Vella v. Hudgins*, 20 Cal.3d 251, 255 (1977).  An exception applies under California Code of Civil Procedure section 1161a, when the court conducts a sharply focused examination of title in the UD action.  *Id.*  The court in *Vella* emphasized res judicata may preclude later suits when the title has been fully and fairly litigated in the UD action.  *Id.* at 256.  The *Vella* court determined res judicata hinged on the record provided by the party seeking to assert it as a bar to claims.  *Id.* at 258.  In *Wood v. Herson*, 39 Cal. App. 3d 737, (1974), the court held res judicata barred the suit because the UD action consisted of a seven day detainer hearing, extensive and complete discovery, detailed evidence and was clearly not the customary UD action.  The *Vella* court used the *Wood* decision as a litmus test noting the facts in Wood are an appropriate example of when UD actions may have preclusive effects.  *Vella*, 20 Cal.3d at 257.

BANA does not present any evidence regarding the UD action which would allow the Court to compare the proceedings in the instant action to those held in *Wood*.  BANA attaches in its request for judicial notice a one page Judgment and Notice of Entry of Judgment.  (ECF No. 30-4, Ex. D at 2.)  The judgment states Fannie Mae is entitled to possession of the unit over all occupants.  However, it does not explain any defenses raised or demonstrate that a full and fair litigation occurred.  BANA has not met its burden in establishing the requirements of res judicata.  Accordingly, the UD action does not bar any of Plaintiff's claims.

///

///

*ii.    Res Judicata: Mountjoy I*

2      BANA argues Plaintiff's second, fifth and sixth causes of action should be dismissed

3   because they are barred under the doctrine of res judicata by Plaintiff's previous state court

4   lawsuit, *Mountjoy I*.  (ECF No. 29-1 at 10–11.)  Plaintiff asserts BANA has not met its burden to

5   produce transcripts, pleadings, or briefs demonstrating the same issues were litigated.  (ECF No.

6   35 at 3.)  Even so, Plaintiff asserts res judicata does not bar the claims because his claims arise

7   after the settlement in *Mountjoy I*.  (ECF No. 35 at 4.)

8      The burden of proving the requirements of res judicata is upon the party seeking to assert

9   it as a bar or estoppel.  *Paladini v. Municpal Markets Co.*, 185 Cal. 672, 674 (1921).  "There are

10  three elements to a successful claim preclusion defense: (1) an identity of claims, (2) a final

11  judgement on the merits, and (3) privity between the parties."  *Marks v. Ocwen Loan Servicing*,

12  2010 WL 3069248, at *3 (9th Cir. Aug. 4, 2010).  Identity of claims exists upon the same

13  transactional nucleus of facts.  *Id.*  The Ninth Circuit weighs multiple factors when determining if

14  the claims arise out of the same transactional nucleus of facts, including whether the facts are

15  related in time, space, and origin.  *Id.*

16     Plaintiff is correct that BANA puts forth no evidence demonstrating the issues in the state

17  court litigation have the same nucleus of facts as the current action.  BANA merely presented the

18  complaint in the action and a form request for dismissal granted and signed by the judge.  (ECF

19  Nos. 30-1 & 30-2.)  Had BANA presented the requisite information, its argument under res

20  judicata still must fail.  Plaintiff alleges BANA charged them fees for the time Plaintiff was not in

21  title or had not been told he was back in title.  (ECF No. 26 ¶¶ 29, 67.)  The aforementioned

22  occurred in a separate time, after the foreclosure sale challenged in the first action.  Accordingly,

23  even if BANA had presented evidence, Plaintiff's complaint suggests the issue at the heart of this

24  lawsuit is BANA's conduct after the settlement agreement was signed.  *Mountjoy I* does not bar

25  the current suit as BANA has not demonstrated the facts arise out of the same time, space or

26  origin.

27                    *iii.    Plaintiff was not prohibited from adding new claims to the SAC*

28     BANA argues Plaintiff should not be permitted to assert claims three, nine, ten, eleven,

twelve, and thirteen in the SAC because they were not raised in Plaintiff's previous complaints and Plaintiff did not seek leave to specifically add them. Plaintiff does not dispute this contention or even discuss the argument in his opposition. However, as this argument addresses the procedures of the Court, the Court will nonetheless discuss it.

BANA does not cite any case law in support of its contention that Plaintiff may not add new claims after being granted leave to amend in an order dismissing the action in part. Other courts have allowed new claims at their discretion when the order granting leave to amend was not specific as to what could be amended. *Compare DeLeon v. Wells Fargo Bank, N.A.*, No. 10-CV-01390-LHK, 2010 WL 4285006, at *3 (N.D. Cal. 2010) (finding the plaintiffs were required to seek leave of court to add new claims because the order granting leave to amend was limited in scope) *with Gilmore v. Union Pac. R. Co.*, No. 09-cv-02180-JAM-DAD, 2010 WL 2089346, at *4 (E.D. Cal. May 21, 2010) (declining to strike new claims brought after leave to amend was granted because plaintiff was not limited to amendment of existing claims and because defendant would not suffer any prejudice). BANA has not presented any argument that allowing Plaintiff to add the new claims would be prejudicial. Furthermore, the order granting leave to amend in part did not limit the scope of the permitted amendment.

Accordingly, the Court declines to dismiss claims three, nine, ten, eleven, twelve, and thirteen on this basis.

### iv. *Claims against ReconTrust Company*

BANA argues ReConTrust should be dismissed because the SAC does not name ReConTrust as a defendant or allege any claims against it. (ECF No. 29-1 at 9.) Plaintiff does not dispute this matter and seemingly concedes the issue. *Stitching Pensioenfonds*, 802 F. Supp. 2d at 1132. Accordingly, ReConTrust is dismissed from the action in its entirety.

### v. *Claims against Fannie Mae*

BANA asserts for the first time in reply that Fannie Mae should be dismissed from the action because Plaintiff does not assert any valid claims against it. The Court will not rule on an argument raised for the first time in a reply brief. *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007). Accordingly, BANA's request to dismiss Fannie Mae is denied.

9

*vi.    Claim One: Violation of the California Homeowners Bill of Rights*

2    BANA moves to dismiss Plaintiff's first cause of action under the Homeowners Bill of

3    Rights ("HBOR"), California Civil Code §§ 2923 *et seq*. (ECF No. 29-1 at 13.) BANA argues

4    Plaintiff cannot prove a material violation of the HBOR because Plaintiff does not allege BANA

5    pursued foreclosure while evaluating Plaintiff's loan for modification. (ECF No. 29-1 at 14.)

6    BANA further asserts it corrected and remedied the violations pursuant to California Civil Code §

7    2924.12(c) and therefore cannot be liable under the HBOR. (ECF No. 29-1 at 14.) Plaintiff

8    addresses BANA's argument that he cannot prove a material violation, but does not address

9    whether the review and denial of Plaintiff's complete loan modification application constitutes

10   corrective compliance. (ECF No. 35 at 9–11.) Plaintiff asserts his HBOR claim under three

11   provisions of the HBOR: § 2923.7, § 2924.10, and § 2923.6(f). Plaintiff does not explicitly

12   reference the dual tracking provision, § 2923.6, in the SAC.

13   To the extent Plaintiff asserts a claim for dual tracking, BANA argues Plaintiff makes no

14   allegations that BANA moved forward on foreclosure proceedings while Plaintiff's loan

15   modification was still pending. (ECF No. 29-1 at 14.) BANA further argues even if dual

16   tracking occurred it corrected and remedied the violation by reviewing Plaintiff's completed loan

17   modification paperwork and denying him a loan modification prior to the trustee's sale. (ECF No.

18   29-1 at 14.)

19   The HBOR prohibits a mortgager from recording a notice of default or notice of sale, or

20   conducting a trustee's sale while the complete first lien loan modification application is pending.

21   Cal. Civ. Code § 2923.6(c). However, a mortgager shall not be liable where the violation was

22   corrected and remedied prior to the recordation of the trustee's deed upon sale. Cal. Civ. Code §

23   2924.12(c). Plaintiff alleges his home loan modification application was denied by BANA on

24   February 17, 2015. (ECF No. 26 ¶ 39.) Plaintiff further alleges that his mortgage was transferred

25   to Seterus on April 14, 2015, and sold to Fannie Mae on May 18, 2015. (ECF No. 26 ¶¶ 41, 43.)

26   Seterus caused to be recorded a Notice of Trustee's Sale dated May 5, 2015. (ECF No. 32 at 36,

27   Ex. 8.) The Trustee's Deed Upon Sale was recorded on June 26, 2015. (ECF No. 32 at 46, Ex.

28   9.) As demonstrated by the documents, the Notice of Trustee's Sale and Trustee's Deed Upon

Sale were both recorded after the completion of BANA's review and denial of Plaintiff's loan modification application. Accordingly, Plaintiff has not alleged facts which demonstrate Defendants recorded a notice while the loan modification application was pending as required by section 2923.6(c). Plaintiff's first claim is dismissed insofar as it alleges a claim for dual tracking.

As to sections 2923.7, 2924.10, and 2923.6(f), BANA merely states they were not the person to foreclose and therefore Plaintiff cannot assert BANA conducted the foreclosure proceedings improperly. However, BANA offers no authority which releases it from liability where it allegedly violated the HBOR prior to transferring the loan to another service provider. It is BANA's burden to adequately raise such arguments if they so desire and BANA has failed to meet that burden here. *See Williams v. Eastside Lumberyard and Supply Co., Inc.*, 190 F. Supp. 2d 1104, 1114 (S.D. Ill. 2001) ("As stated, this Court declines to do the legal work that [Plaintiff's] attorney should have done . . . Doing so would place this court in the unenviable position of plaintiff's attorney, and it would be highly unfair to require defendants to always respond to an argument that was not sufficiently raised by their adversary."). Accordingly, the Court denies BANA's motion to dismiss as to Plaintiff's first claim for violation of the HBOR.

> vii. *Claims Two, Three, Four, and Five: Fraud (False Promises), Fraud (Concealment), Fraud (Intentional Misrepresentation), and Fraud (Negligent Misrepresentation)*

BANA argues Plaintiff cannot maintain his causes of action based on fraud for two reasons. As to claims two and three, BANA asserts Plaintiffs claims are predicated on BANA's alleged promise it would not foreclose. (ECF No. 29-1 at 15.) BANA contends Plaintiff admits BANA was not the entity to foreclose by acknowledging in the SAC that BANA sold the loan to Seterus and therefore was not the entity to break the promise. (ECF No. 29-1 at 15.) As to claims four and five, BANA asserts Plaintiff fails to allege facts in support of two elements — material misrepresentation and justifiable detrimental reliance — and therefore the claims must be dismissed. (ECF No. 29-1 at 15.) Plaintiff does not respond to any of BANA's arguments on these points or address his claims for fraud in his opposition. (*See* ECF No. 35.) As such, the

Court finds Plaintiff concedes this point by failing to address its substance in his opposition. *Stitching Pensioenfonds*, 802 F. Supp. 2d at 1132. Plaintiff's second, third, fourth, and fifth causes of action are dismissed against BANA. However, this dismissal is with leave to amend as the Court cannot conclude Plaintiff is unable to plead fraud in any of the four forms if given the opportunity.

### viii.     Claim Six: Negligence

Much as it did in fraud, BANA argues it was not the entity to foreclose and therefore cannot be liable for negligence. (ECF No. 29-1 at 15.) Specifically, BANA asserts that even if it did owe Plaintiff a duty, it was not the entity to foreclose and therefore did not breach any duty. (ECF No. 29-1 at 15.) Plaintiff does not address BANA's argument or his negligence claim in his opposition. Again, the Court finds Plaintiff concedes this issue by failing to even mention negligence let alone address the merits of BANA's argument. Accordingly, Plaintiff's sixth claim for negligence is dismissed with leave to amend against BANA.

### ix.     Claim Eight: Violation of the Rosenthal Fair Debt Collection Practices Act

BANA argues Plaintiff has failed to state a claim under the Rosenthal Fair Debt Collection Practices Act ("RFDCPA") because he does not allege specific times and content of the allegedly wrongful communications. (ECF No. 29-1 at 16.) Plaintiff does not discuss this argument in his opposition and thus concedes the issue. However, as Plaintiff will be given leave to amend, the issue of pleading with particularity warrants discussion.

To state a claim under the RFDCPA a plaintiff must allege (1) that the plaintiff was a costumer, (2) that the defendant was a debt collector within the meaning of the statute, and (3) that the defendant committed an act or omission in violation of the statute. *Robinson v. Managed Accounts Receivables Corp.*, 654 F. Supp. 2d 1051, 1057 (C.D. Cal. 2009). The RFDCPA is directed at false, misleading or harassing communications and as such courts have held that the date and contents of each alleged communication must be pled with particularity. *See, e.g.*, *Arikate v. J.P. Morgan Chase & Co.*, 430 F. Supp. 2d 1013, 1027 (N.D. Cal. 2006).

Plaintiff alleges BANA sent "correspondence in the form of statements." (ECF No. 26 ¶ 29.) Plaintiff further alleges that "from the period of March 2015 to present, Plaintiff received notices, letters, calls from BANA, Seterus and Fannie Mae at various hours of the day or night." (ECF No. 26 ¶ 107.) Plaintiff does not detail the contents or dates of those alleged notices, letters, or calls. In fact, Plaintiff largely fails to allege facts about the communications at all and focuses mainly on the communications with attorneys from Severson & Werson during the loan modification process. Based on these allegations, Plaintiff fails to state a claim under the RFDCPA. Accordingly, Plaintiff's eighth cause of action is dismissed with leave to amend to allege the dates and contents of the communications at issue.

x. *Claim Eleven: Intentional Infliction of Emotional Distress ("IIED")*

BANA asserts Plaintiff cannot state a claim for intentional infliction of emotional distress because the conduct alleged does not arise to a level of extreme and outrageous conduct. (ECF No. 29-1 at 17.) Plaintiff does not address BANA's argument or his claim for Intentional Infliction of Emotional Distress and thus concedes the issue. Accordingly, Plaintiff's eleventh claim is dismissed with leave to amend against BANA.

xi. *Claim Twelve: Negligent Infliction of Emotional Distress*

BANA moves to Dismiss Plaintiff's Negligent Infliction of Emotional Distress claim on the grounds that California does not recognize an individual tort for Negligent Infliction of Emotional Distress. (ECF No. 29-1 at 17.) Plaintiff does not respond to BANA's argument and once again the Court finds the issue is waived. Accordingly, BANA's motion to dismiss Plaintiff's twelfth cause of action is granted with leave to amend.

B. Seterus's Motion to Dismiss

i. *Claim One: Violation of the California Homeowners Bill of Rights*

Seterus asserts Plaintiffs HBOR claim should be dismissed against it because Plaintiff fails to allege any facts demonstrating that Seterus violated the HBOR. (ECF No. 31 at 12–13.) Seterus argues the sole allegations against Seterus with respect to the HBOR claims are conclusory and do not set out the requisite facts necessary to plausibly allege a violation occurred as a result of Seterus's actions. (ECF No. 31 at 12-13.) Seterus argues that Plaintiff did not plead

that he requested a foreclosure prevention from Seterus after the loan was transferred. (ECF No. 31 at 12.) Seterus claims requesting a prevention begins the need for a single point of contact and thus Seterus could not violate the single point of contact requirement. (ECF No. 31 at 12.) Additionally, Seterus contends Plaintiff does not allege any facts demonstrating he filed loan modification documents with Seterus and that a notice of receipt can only be sent after receiving such documents. (ECF No. 31 at 13.) Finally, Seterus argues Plaintiff does not plead any facts indicating how Seterus's actions caused Plaintiff actual economic damage. (ECF No. 31 at 13.)

Plaintiff does not contest the necessary facts he must plead in order to state a claim against Seterus. Instead, Plaintiff argues he can allege more facts specific to Seterus demonstrating its failure to comply with HBOR §§ 2923.7 and 2924.10. (ECF No. 36 at 3.) Plaintiff contends he can allege facts demonstrating Plaintiff's counsel contacted Seterus regarding a modification application and spoke with in-house counsel, Chris Fowler, and was not provided a single point of contact. Plaintiff further claims he submitted loan modification documents to Seterus, such as Uniform Borrower Assistance Forms, but never received written acknowledgement of their receipt. (ECF No. 36 at 3–4.) These facts as outlined by Plaintiff would cure the first two deficiencies noted by Seterus.

As to Seterus's final argument — that Plaintiff does not plead facts indicating Seterus's actions caused economic damage to Plaintiff — Seterus cites two district court cases in support of its argument. (ECF No. 31 at 13.) This Court's previous order noted that to state a claim pursuant to the HBOR, a plaintiff must plead "(1) a material violation of one of the enumerated code sections; (2) by a mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent; (3) that causes actual economic damages." *Heflebower v. JPMorgan Chase Bank*, NA, No. 1:12–CV–1671, 2014 WL 897352, at *12 (E.D. Cal. March 6, 2014) (citing *Rockridge Trust v. Wells Fargo, N.A.*, 985 F. Supp. 2d 1110, 1149 (N.D. Cal. 2013)). Here, Plaintiff seeks damages in his prayer for relief, but does not provide any allegations as to how Seterus's actions caused him to incur economic damages. Nor does Plaintiff suggest that he can add facts to cure this deficiency. However, reviewing the complaint and Plaintiff's additional facts, Plaintiff would be adding allegations that could make Seterus culpable for the loss of Plaintiff's home. Therefore, the Court

14

cannot say that no set of facts exists under, which Plaintiff could allege Seterus caused economic damage. For the foregoing reasons, Plaintiff's claim for violations of the HBOR is dismissed with leave to amend as to Seterus.

>    ii.    *Claims Two, Three, Four, and Five: Fraud (False Promises), Fraud (Concealment), Fraud (Intentional Misrepresentation), and Fraud (Negligent Misrepresentation)*

Seterus argues Plaintiff's claims for fraud should be dismissed against it because Plaintiff does not set forth any allegations of fraud against Seterus. (ECF No. 31 at 13.) Seterus contends the allegations of fraud speak solely to actions taken by BANA. (ECF No. 31 at 13.) Rather than address the merits of Seterus's argument, Plaintiff asserts in opposition that he can add facts alleging fraud against Seterus. (ECF No. 36 at 3.) Plaintiff contends he can add an allegation that "Seterus also misrepresented that it had not received documents from Plaintiff in connection with his loan modification." (ECF No. 36 at 4.) Plaintiff subsequently stated he retained proof that he had faxed his application documents to Seterus. (ECF No. 36 at 4.)

As previously stated a claim for fraud requires Plaintiff to prove five elements: (1) misrepresentation (false representation, concealment, or nondisclosure); (2) knowledge of falsity; (3) intent to induce reliance; (4) justifiable reliance; and (5) resulting damages. *Lazar v. Superior Court*, 12 Cal. 4th 631, 638 (1996). Plaintiff's additional facts, if alleged, would not meet this standard. While the allegation of a misrepresentation may be sufficient, Plaintiff goes on to acknowledge that he knew the representation was false because he had retained proof that he faxed the application. Therefore, Plaintiff would be unable to demonstrate that he justifiably relied on the misrepresentation and thus cannot plead a necessary element of fraud. Accordingly, Plaintiff's claims two, four, and five are dismissed with prejudice as the proposed facts demonstrate Plaintiff would not be able to state a claim.

Neither party discusses whether Plaintiff can allege facts demonstrating fraud through concealment. As the Court noted above, the elements of a claim for concealment are different than ordinary fraud. There is no indication at this time that Plaintiff would not be able to allege facts of concealment against Seterus. Therefore, Plaintiff's third claim is dismissed with leave to

amend.

### iii. Claim Six: Negligence

Seterus asserts Plaintiff cannot state a claim for negligence because the allegations are premised on actions by BANA and Seterus did not owe Plaintiff a duty of care.  (ECF No. 31 at 14.)  Seterus contends California law is clear that lenders and loan servicers do not owe borrowers a duty of care.  (ECF No. 31 at 14.)  In so arguing, Seterus urges the Court to not adopt the minority line of cases which applies a factor test to determine if a duty exists.  (ECF No. 31 at 15.)  Plaintiff contends it has alleged facts against Seterus sufficient to state a claim for negligence and that Seterus does owe Plaintiff a duty of care.  (ECF No. 36 at 4–6.)

As an initial matter, Seterus's argument that a loan servicer does not owe a borrower a duty of care is not novel.  On many occasions, this Court has been asked to review the cases cited by Seterus and apply the general rule that a duty does not exist.  Seterus essentially asks this Court to revisit its previous rulings, but does not present any new arguments or case law.  The Court declines to do so.  As the Court found on many occasions, whether a duty exists is a question of law that is answered on a case-by-case basis and the *Biakanja* factors apply to determine if a duty of care exists.  *See McKinley v. CitiMortgage*, Inc., No. 2:13-cv-01057-TLN-CKD, 2016 WL 3277254, at *8 (E.D. Cal. June 14, 2016); *Beltz v. Wells Fargo Home Mortgage*, No. 2:15-cv-01731-TLN-CKD, 2017 WL 784910, at *6 (E.D. Cal. Mar. 1, 2017); *Meixner v. Wells Fargo Bank, N.A.*, 101 F. Supp. 3d 938, 952 (E.D. Cal. 2015); *Dougherty v. Bank of America, N.A.*, 177 F. Supp. 3d 1230, 1250 (E.D. Cal. 2016).

The elements of a cause of action for negligence are "(1) a legal duty to use reasonable care, (2) breach of that duty, and (3) proximate [or legal] cause between the breach and (4) the plaintiff's injury."  *Keen v. American Home Mortg. Servicing Inc.*, 664 F. Supp. 2d 1086, 1096 (E.D. Cal. 2009) (quoting *Mendoza v. City of Los Angeles*, 66 Cal. App. 4th 1333, 1339 (1998)).  In California, generally "a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money."  *Nymark v. Heart Fed. Savings & Loan Assn.*, 231 Cal. App. 3d 1089, 1096 (1991).  However, "*Nymark* does not support the sweeping conclusion that a lender

never owes a duty of care to a borrower." *Alvarez*, 228 Cal. App. 4th at 945 (internal quotation marks omitted). To determine whether a duty of care exists, the Court must balance the *Biakanja* factors:

> [1] the extent to which the transaction was intended to affect the plaintiff, [2] the foreseeability of harm to him, [3] the degree of certainty that the plaintiff suffered injury, [4] the closeness of the connection between the defendant's conduct and the injury suffered, [5] the moral blame attached to the defendant's conduct, and [6] the policy of preventing future harm.

*See Nymark*, 231 Cal. App. 3d at 1098 (citing *Biakanja v. Irving*, 49 Cal. 2d 647, 650 (1958)).

Plaintiff mentions the *Biakanja* factors but only vaguely applies them. (ECF No. 36 at 6.) Seterus does not mention nor apply the *Biakanja* factors at all. Thus, the Court reviews Plaintiffs' arguments and the complaint on its face.

As to the first factor — the extent to which the transaction was intended to affect Plaintiff — Plaintiff's allegations suggest that Defendants' calculations in Plaintiff's loan modification applications and Defendants' misrepresentations affected whether Plaintiff received a modification. A modification would make it more likely for Plaintiff to become current on the loan and keep possession of his house. Thus, this factor weighs in favor of Plaintiff.

As to the second factor — the foreseeability of harm — Seterus could foresee Plaintiff's inability to make his loan current without a loan modification or proper accounting, thus allowing Seterus to foreclose on Plaintiff's home. As stated in *Garcia v. Ocwen Loan Servicing, LLC*, "[a]lthough there was no guarantee the modification would be granted had the loan been properly processed, the mishandling of the documents deprived Plaintiff of the possibility of obtaining the requested relief." *Garcia v. Ocwen Loan Servicing, LLC*, No. C 10–0290 PVT, 2010 WL 1881098, at *3 (N.D. Cal. May 10, 2010)). This factor also weighs in favor of Plaintiff.

As to the third factor — the degree of certainty that Plaintiff suffered injury — without a doubt Plaintiff has alleged a loss of his home due to foreclosure as well as emotional distress. (ECF No. 26 ¶¶ 43, 98.) In previous cases, this Court has found the degree of certainty either missing or indeterminable. *Beltz v. Wells Fargo Home Mortgage*, No. 2:15-cv-01731-TLN-CKD, 2017 WL 784910, at *6 (E.D. Cal. Mar. 1, 2017). However, in the instant action, Plaintiff's

home has already been foreclosed on and an eviction and unlawful detainer action occurred. The degree of certainty is clear as the loss of a home is the eventual end result in foreclosure cases and has already occurred in the present action.

As to the fourth factor — the closeness of the connection between the defendant's conduct and the injury suffered — the Court finds that Plaintiff has sufficiently alleged a close connection. Plaintiff alleges Seterus knew the information provided by BANA was false because Plaintiff informed it of the falsity and sought help from Seterus in fixing the error. (ECF No. 26 ¶ 42 at 9.) Despite this knowledge, Seterus foreclosed on Plaintiff's home. Thus, Plaintiff's harm is closely related to Seterus's conduct.

As to the fifth factor — the moral blame attached to the defendant's conduct — while not entirely blameless, Plaintiff's allegations suggest Seterus was not the main party culpable for the foreclosure. The Court, therefore, declines to speculate to what extent Seterus's actions create moral blame. Thus, this factor favors neither party.

Finally, the sixth factor — the policy of preventing future harm — weighs in favor of Plaintiff because the passing of the Homeowner's Bill of Rights "demonstrates a rising trend to require lenders to deal reasonably with borrowers in default to try to effectuate a workable loan modification." *Alvarez*, 228 Cal. App. 4th at 950; *Meixner*, 101 F. Supp. 3d at 955.

After carefully balancing the six *Biakanja* factors, the Court finds Seterus likely owed Plaintiff a duty of care to consider Plaintiff's oral and written concerns regarding an audit and modification.

Seterus asserts that it could not breach a duty of care if one existed because the loan modification process was conducted solely between BANA and Plaintiff. (ECF No. 31 at 15.) However, Plaintiff alleges Seterus knew of the talks and that Plaintiff attempted to open loan modification talks with Seterus. Thus, even on these facts Seterus is shown to have breached its duty of care by not dealing reasonably with Plaintiff after knowledge of potential miscalculations and Plaintiff's attempts to file loan modification paperwork with Seterus. Accordingly, Seterus's motion to dismiss Plaintiff's sixth claim for negligence is denied.

///

*iv.*    *Claim Seven: Violation of Business and Professions Code § 17200*

Seterus moves to dismiss Plaintiff's seventh claim for violations of California Business and Profession code § 17200 on two grounds.  Seterus first asserts the claim rests on Plaintiff's first, second, third, fourth, fifth and sixth claims and because they fail to state a claim the seventh cause of action necessarily fails.  (ECF No. 31 at 15.)  Seterus also argues the seventh claim fails because Plaintiff fails to plead that he suffered any monetary damage.  (ECF No. 31 at 16.)  Plaintiff does not address Seterus's first contention, but does argue that he plead sufficient damages.  (ECF No. 36 at 6–7.)  Plaintiff states he pleads emotional distress damage, physical conditions worsening, and paying for legal services.  (ECF No. 36 at 7.)  Seterus counters that emotional distress damages are not monetary damages, but does not address the issue of legal fees.  (ECF No. 41 at 8.)

As to Seterus's first argument that Plaintiff's claim rests on the previous six claims, the Court denied Seterus's motion as to Plaintiff's negligence claim which is alleged in claim six.  Therefore, since the Court has ruled that claim six does state a claim, Seterus's argument is unpersuasive.

As to Seterus's second contention, Seterus asserts Plaintiff fails to allege any monetary harm and thus cannot sustain his claim for unfair competition.  (ECF No. 31 at 16.)  However, Seterus's argument is unpersuasive as Plaintiff has indeed met the requirement to plead damages.  Seterus itself cites *In re Tobacco II Cases*, 49 Cal.4th 298, 314 (2009), for the proposition that Plaintiff must allege monetary harm.  However, *In re Tobacco* states "a private person has standing to sue only if he or she has suffered injury in fact and has lost money or *property* as a result of unfair competition."  *Id.* (internal quotation omitted) (emphasis added).  Plaintiff has clearly alleged through the complaint that Seterus foreclosed on his home and thus he lost the property.  Accordingly, Plaintiff has sufficiently alleged a claim for unfair competition.  Seterus's motion to dismiss Plaintiff's seventh claim is denied.

///

///

///

1                *v.*     *Claim Eight: Violation of the Rosenthal Fair Debt Collection Practices*

2                  *Act*

3       Seterus moves to dismiss Plaintiff's claim under the RFDCPA for two reasons. First,

4 Seterus argues a residential mortgage loan does not qualify as "debt" under the act. (ECF No. 31

5 at 16.) In support of this argument, Seterus argues the Court found in Bank of America's last

6 motion to dismiss that mortgage loans do not qualify. (ECF No. 31 at 17.) Second, Seterus

7 asserts Plaintiff failed to plead with specificity the unlawful conduct or communications which

8 allegedly violate the RFDCPA. (ECF No. 31 at 17.) Plaintiff disagrees that this Court previously

9 found a mortgage loan does not qualify as debt under RFDCPA. (ECF No. 36 at 7.) However,

10 Plaintiff does not respond to Seterus's second argument.

11       The Court noted in its previous order that "[t]he legislative history of section 1692a(6)

12 indicates conclusively that a debt collector does not include the consumer's creditors, a mortgage

13 servicing company, or an assignee of a debt, *as long as the debt was not in default at the time it*

14 *was assigned.*" *Perez v. Ocwen Loan Servicing, LLC*, No. 2:15-CV-1708 MCE KJN PS (TEM),

15 2015 WL 9286554, at *2 (E.D. Cal. Dec. 21, 2015) (quoting *Perry v. Stewart Title Co.*, 756 F.2d

16 1197, 1208 (5th Cir. 1985)) (emphasis added). The Court found that Plaintiff had not alleged

17 Defendants were debt collectors under the provisions of the RFDCPA. (ECF No. 21 at 17.)

18       However, in the SAC, Plaintiff alleges "Defendants are debt collectors who, at all relevant

19 times, were collecting a debt." (ECF No. 26 ¶ 105.) Furthermore, "[a]t the time that Defendants

20 acquired the alleged debt, Defendants were asserting that Plaintiff was in default. Thus . . .

21 Plaintiff was in default on the debt at the time it was obtained by Defendants." (ECF No. 26 ¶

22 106.) Plaintiff added new allegations that the mortgage loan was in default when Seterus took

23 possession of the debt and Seterus is a debt collector. Thus, Seterus falls within the exception the

24 Court noted in its previous order that a mortgage loan can qualify as debt if the mortgage is in

25 default when it is reassigned. Accordingly, Plaintiff sufficiently alleges facts to demonstrate

26 Seterus is a debt collector and the mortgage loan is a debt under RFDCPA.

27       Seterus argues that Plaintiff has not alleged with specificity the unlawful conduct or

28 communications which allegedly violate the RFDCPA. The RFDCPA is directed at false,

misleading or harassing communications; as such courts have held that the date and contents of each alleged communication must be pled with particularity. *See, e.g., Arikate v. J.P. Morgan Chase & Co.*, 430 F. Supp. 2d 1013, 1027 (N.D. Cal. 2006). As discussed above, Plaintiff does not allege the contents and dates of the communications with specificity as to BANA. As the same factual allegations are made against Seterus, Plaintiff similarly has failed to plead a claim for violation of the RFDCPA against Seterus. Accordingly, Seterus's motion to dismiss Plaintiffs RFDCPA claim is granted with leave to amend.

### vi.   Claim Eleven: Intentional Infliction of Emotional Distress

Seterus moves to dismiss Plaintiff's Intentional Infliction of Emotional Distress claim arguing the claim does not allege the basis for Seterus's liability. (ECF No. 31 at 17–18.) Seterus asserts Plaintiff does not allege what acts were taken by any Defendants which would apprise Defendants of the acts forming the basis of liability. (ECF No. 31 at 18.) The Court notes Plaintiff's opposition constitutes a page of case analysis without explanation as to how the cases demonstrate he has adequately pleaded an Intentional Infliction of Emotional Distress claim. (ECF No. 36 at 9–10.) Plaintiff does not set forth any facts from his complaint that relate to his claim for Intentional Infliction of Emotional Distress. (ECF No. 26 at 9–10.) Plaintiff has abandoned this argument. However, there is no indication that Plaintiff could not allege facts supporting a claim for intentional infliction of emotional distress. As such, Seterus's motion to dismiss Plaintiff's eleventh claim is granted with leave to amend as against Seterus.

### vii.   Claim Twelve: Negligent Infliction of Emotional Distress

As to Plaintiff's claim for Negligent Infliction of Emotional Distress ("NIED"), Seterus asserts that it does not owe Plaintiff a duty of care and thus cannot be liable under a claim of NIED.[3] (ECF No. 31 at 18.) As the Court noted above, Seterus owes Plaintiff a duty of care, *see*

---

[3]      In the same section, Seterus argues Plaintiff does not allege facts demonstrating conduct that is extreme and outrageous. (ECF No. 31 at 17–18.) However, the extreme and outrageous standard is only applicable in intentional infliction of emotional distress claims. *See Nally v. Grace Community Church of the Valley*, 47 Cal. 3d 278, 300 (1988) (listing the elements of intentional infliction of emotional distress). However, negligent infliction of emotional distress only requires negligent conduct. *See Hall v. Apollo Group, Inc.*, 2014 WL 4354420, at * 6 (N.D. Cal. Sept. 2, 2014) ("The elements of a claim of negligent infliction of emotional distress are: (1) the defendant engaged in negligent conduct; (2) the plaintiff suffered serious emotional distress; and (3) the defendant's negligent conduct was a cause of the serious emotional distress."). Seterus does not argue that Plaintiff fails to allege negligent conduct. Accordingly, the argument does not apply to Plaintiff's negligent infliction of emotional distress claim.

*supra* section III, C.  Accordingly, Seterus's motion to dismiss Plaintiff's twelfth claim is denied.

*viii.*     *Claim Thirteen: Wrongful Foreclosure and Eviction*

Seterus asserts the claim for wrongful foreclosure and eviction is premised on the notice of default being rescinded prior to the foreclosure.  (ECF No. 31 at 18.)  Seterus argues the notice of default mentioned by Plaintiff is the incorrect date and was never rescinded.  (ECF No. 31 at 19.)  Seterus further contends Plaintiff does not plead facts supporting the first two elements of wrongful foreclosure.  (ECF No. 31 at 19.)  Plaintiff does not address the first two elements of wrongful foreclosure in his opposition.  However, Plaintiff addresses the tender rule as a separate issue and argues in his opposition that the tender rule does not apply.  (ECF No. 36 at 2–3.)  The Court will conduct an analysis of the elements of wrongful foreclosure despite Plaintiff's failure to discuss the first two elements.

To prove a claim for wrongful foreclosure and eviction a plaintiff must plead: "(1) the trustee or mortgagee caused an illegal, fraudulent, or willfully oppressive sale of real property pursuant to a power of sale in a mortgage or deed of trust; (2) the party attacking the sale (usually but not always the trustor or mortgagor) was prejudiced or harmed; and (3) in cases where the trustor or mortgagor challenges the sale, the trustor or mortgagor tendered the amount of the secured indebtedness or was excused from tendering."  *Miles v. Deustche Bank National Trust Co.*, 236 Cal. App. 4th 394, 408 (4th Distr. 2015) (quoting *Lona v. Citibank, N.A.*, 202 Cal. App. 4th 89, 104 (2011)).

a.   <u>First Element: Illegality of the Trustee's Sale</u>

Seterus argues Plaintiff's sole allegation of illegality is that the notice of default was rescinded and Plaintiff was never provided a new notice of default.  (ECF No. 31 at 19.)  Seterus asserts the notice of default was not illegal or unlawful because it was never rescinded and therefore the sale is valid.  (ECF No. 31 at 19.)  Plaintiff does not respond to this argument.

Plaintiff does not dispute Seterus's contention that the 2009 notice of default[4] was not

---

[4]     Seterus requests the Court take judicial notice of ten documents: nine documents pertaining to the chain of title of the property all recorded in the Official Records of Sacramento County and the tenth document being the Court's previous order issued on August 9, 2016.  Under Federal Rule of Evidence § 201 a court can take judicial notice of a document when the subject "can be accurately and readily determined from the sources whose accuracy cannot reasonably be questioned." For the reasons stated in Seterus's request and noting no opposition by Plaintiff,

rescinded and thus remained in effect to permit the trustee's sale in 2015.[5]  However, the evidence by Seterus does not definitively prove that the 2009 notice of default was not rescinded. Seterus states in its motion that "the [2009] notice was never rescinded.  The only rescission of any foreclosure document that appears in the relevant portion of the title history for the subject property is a rescission of a prior trustee's deed upon sale from 2012." (ECF No. 31 at 19.) However, Seterus does not provide the Court with the entire chain of title or the rescission of the Trustee's deed upon sale from 2012.  As such, the Court cannot decide this issue based on what Seterus has provided to the Court.  Accordingly, the Court is left with a factual dispute which at this juncture the Court must find in favor of Plaintiff.  *See Cruz v. Beto*, 405 U.S. 319, 322 (1972) (holding on a motion to dismiss, the factual allegations of the complaint must be accepted as true).

Taking Plaintiff's allegation as true, the trustee's sale in 2015 was predicated on a rescinded notice of default.  (ECF No. 26 ¶ 144.)  Accordingly, Plaintiff has alleged sufficient facts to demonstrate the potential illegality of the trustee's sale.

b.  Second Element: Prejudice or Harm to Plaintiff

Seterus asserts Plaintiff has not alleged he was prejudiced by the purported defect.  (ECF No. 31 at 19.)  Plaintiff alleged in multiple places in the complaint that as a result of Defendants' actions collectively he suffered harm by way of a second foreclosure on his home.  (*See e.g.*, ECF No. 26 ¶ 117.)  Plaintiff incorporates by reference the allegations of all preceding claims and facts in his thirteenth claim.  Thus, construing the complaint liberally as the Court must do, Plaintiff has alleged harm caused by the alleged wrongful foreclosure.  *See Orcilla v. Big Sur, Inc.*, 244 Cal. App. 4th 982, 998–99 (6th Distr. 2016) (liberally construing a complaint and holding the plaintiff alleged harm even where the wrongful foreclosure claim did not incorporate by reference the remaining  allegations).  Accordingly, Plaintiff has adequately alleged that he suffered harm.

the Court GRANTS Seterus's request and takes judicial notice of the attached exhibits pursuant to Federal Rule of Evidence § 201 (ECF No. 32).

[5]     Plaintiff alleges "The Notice of Default used to sell the home was from 2011."  (ECF No 26 ¶ 144.)  Seterus notes in its motion that the Notice of Default was actually filed in 2009.  In support of this statement, Seterus submitted the Notice of Default to the Court in its request for judicial notice.  (ECF No. 32, Ex. B.)  The Court takes Plaintiff's references to the 2011 Notice of Default to mean the one filed in 2009 as Plaintiff does not allege he was served with more than one Notice of Default.

Seterus asserts that since Plaintiff seeks equitable relief for a wrongful foreclosure he must plead that he has tendered the full debt due.[6]  (ECF No. 31 at 10.)  Plaintiff asserts three arguments in support of his contention that the tender rule does not apply: (1) Plaintiff attacks the validity of the underlying debt; (2) Plaintiff argues it would be inequitable to require tender; and (3) Plaintiff avers that a borrower does not need to tender the debt when the lawsuit is based on violations of the HBOR.  (ECF No. 36 at 2.)

"An allegation of tender of the indebtedness is necessary when the person seeking to set aside the foreclosure sale asserts the sale is voidable due to irregularities in the sale or notice procedure." *West v. JPMorgan Chase Bank, N.A.*, 214 Cal. App. 4th 780, 801–02, (2013) (citing *Abdallah v. United Sav. Bank*, 43 Cal. App. 4th 1101, 1109, (1996)); *see also Karlsen v. Am. Sav. & Loan Ass'n*, 15 Cal. App. 3d 112, 117, (1971) ("A valid and viable tender of payment of the indebtedness owing is essential to an action to cancel a voidable sale under a deed of trust."). This rule prevents "'a court from uselessly setting aside a foreclosure sale on a technical ground when the party making the challenge has not established his ability to purchase the property.'" *Magdaleno v. Indymac Bancorp, Inc.*, 853 F.Supp. 2d 983, 991 (E.D. Cal. 2011) (quoting *Williams v. Countrywide Home Loans*, No. C 99–0242(SC), 1999 WL 740375, at *2 (N.D. Cal. Sept. 15, 1999)).

Courts must strictly apply the tender rule in wrongful foreclosure cases.  *Nguyen v. Calhoun*, 105 Cal. App. 4th 428, 439, (2003).  "'The tenderer must do and offer everything that is necessary on his part to complete the transaction, and must fairly make known his purpose without ambiguity, and the act of tender must be such that it needs only acceptance by the one to whom it is made to complete the transaction.'"  *Madlaing v. JPMorgan Chase Bank, N.A.*, No. 2:12–CV–02069 (LJO), 2013 WL 2403379, at *5 (E.D. Cal. May 31, 2013) (quoting *Gaffney v. Downey Savs. & Loan Ass'n*, 200 Cal. App. 3d 1154, 1165, (1988)).

---

[6]     Seterus seeks to invoke the tender rule to dismiss the SAC in its entirety, but does not site any authority extending the tender rule beyond the wrongful foreclosure context.  The Court is not convinced that Plaintiff's lack of pleading tender would dismiss Plaintiff's claims sounding in tort.  However, the Court need not address this concern in light of the Court's ruling on the issue.

"A full tender may not be required where one or more of four recognized exceptions applies." *Azam v. Wells Fargo Bank, N.A.*, 677 Fed. Appx. 326, 327 (9th Cir. 2017) (citation omitted). Case law recognizes four exceptions to the tender requirement: (1) the borrower attacks the validity of the debt (e.g., based on fraud); (2) the borrower has a counterclaim or setoff sufficient to cover the amount of debt due; (3) it would be inequitable as to a party not liable for the debt; and (4) the trustee's deed is void on its face. *See Lona*, 202 Cal. App. 4th at 112–13.

Here, Plaintiff asserts he is excused from the tender requirement because his complaint attacks the validity of the loan and it would be inequitable to require tender. California courts have held a plaintiff pleaded an exception to the tender rule through its other causes of action even if the exception is not explicitly alleged in the wrongful foreclosure claim. *See Orcilla*, 244 Cal. App. 4th at 999 (holding a plaintiff pleaded exceptions to the tender ruling elsewhere in the complaint). Plaintiff explicitly alleges the amount owed on the debt is invalid in his claim for fraud by false promise (ECF No. 26 ¶ 67), fraud by intentional misrepresentation (ECF No. 26 ¶ 83), fraud by negligent misrepresentation (ECF No. 26 ¶ 87), negligence (ECF No. 26 ¶ 92), and breach of contract (ECF No. 26 ¶ 116). Thus, Plaintiff has adequately alleged facts supporting the first exception to the tender rule and the Court need not examine the rest of Plaintiff's argument.

Plaintiff has adequately alleged facts supporting the three elements necessary to prove a claim for wrongful foreclosure and eviction. Accordingly, Seterus's motion to dismiss Plaintiff's thirteenth claim is denied.

## IV. CONCLUSION

For the above state reasons, the Court hereby ORDERS as follows:

1. Plaintiff's first claim is DISMISSED without prejudice against Seterus and DISMISSED only insofar as it asserts a claim under § 2923.6 against BANA;

2. Seterus's motion to dismiss Plaintiff's second claim is GRANTED with prejudice and BANA's motion to dismiss the second claim is GRANTED with leave to amend.

3. Both Seterus and BANA's motion to dismiss Plaintiff's third claim are GRANTED with leave to amend;

4.  Seterus's motion to dismiss Plaintiff's fourth claim is GRANTED with prejudice and BANA's motion to dismiss the fourth claim is GRANTED with leave to amend;

5.  Seterus's motion to dismiss Plaintiff's fifth claim is GRANTED with prejudice and BANA's motion to dismiss the fifth claim is GRANTED with leave to amend;

6.  Both Seterus's and BANA's motion to dismiss Plaintiff's sixth claim are GRANTED with leave to amend;

7.  Seterus's motion to dismiss Plaintiff's seventh claim is DENIED;

8.  Both Seterus's and BANA's motion to dismiss Plaintiff's eighth claim are GRANTED with leave to amend.

9.  Both Seterus's and BANA's motion to dismiss Plaintiff's eleventh claim are GRANTED with leave to amend;

10. Seterus's motion to dismiss Plaintiff's twelfth claim is DENIED and BANA's motion to dismiss Plaintiff's twelfth claim is GRANTED with leave to amend;

11. Seterus's motion to dismiss Plaintiff's thirteenth claim is DENIED; and

12. Defendant ReConTrust is DISMISSED in its entirety.

Plaintiff is granted thirty (30) days from the date of this Order to file a Third Amended Complaint.  Plaintiff is not permitted leave to amend beyond the confines of this order. Defendants are afforded twenty-one (21) days from the date Plaintiff files an amended complaint to file an answer.

IT IS SO ORDERED.

Dated: January 8, 2018

Troy L. Nunley
United States District Judge

26