1
2
3
4
5
6
7
8
9
10

**UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CALVIN MOUNTJOY, | No. 2:15-cv-02204-DJC-DB |
| Plaintiff, | **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |
| v. | |
| SETERUS, INC., | |
| Defendant. | |

Plaintiff Calvin Mountjoy brought this case alleging that his home was wrongfully foreclosed following an unlawful nonjudicial foreclosure process.  In this diversity action, Plaintiff alleges that Defendant Seterus, Incorporated failed to follow the California Homeowner Bill of Rights in considering Plaintiff's application for a loan modification, and that the foreclosure of his home violated California law.

Defendant moves this Court for summary judgment on Calvin Mountjoy's remaining claims related to this allegedly unlawful foreclosure.  (*See* Def.'s Mem. of P. and A. in Supp. of Def.'s Mot. for Summ. J. (ECF No. 97-4) ("Def.'s MSJ").)  Because there remains at least one disputed issue of material fact regarding Plaintiff's claim under the California Homeowner Bill of Rights ("HBOR") and separately for wrongful foreclosure and intentional infliction of emotional distress, the Court DENIES summary judgment on Plaintiff's first claim under the HBOR; Plaintiff's seventh claim under

1  California's unfair competition law ("UCL"), California Business and Professions Code

2  section 17200; Plaintiff's eleventh claim for intentional infliction of emotional distress;

3  and Plaintiff's thirteenth claim for wrongful foreclosure.  However, the Court finds that

4  Defendant is entitled to judgment as a matter of law on the remaining claims for

5  negligence (sixth claim), and negligent infliction of emotional distress (twelfth claim).

6  ## BACKGROUND

7  This Court has, on several occasions, summarized the factual background of

8  this case which need not be repeated here.  (*See* ECF No. 44 (order granting and

9  denying in part motion to dismiss against Plaintiff's second amended complaint); ECF

10 No. 67 (order granting and denying in part motion to dismiss against Plaintiff's third

11 amended complaint).)  Relevant for purposes of this Motion, this suit revolves around

12 real property located at 8647 Adamstown Way, Elk Grove, California ("the Property").

13 (*See* Pl.'s Third Am. Compl. ¶ 5 (ECF No. 49) ("TAC").)  After Bank of America

14 foreclosed on the Property in 2011, Plaintiff sued, resulting in a settlement that

15 required Bank of America to review Plaintiff's application for a loan modification,

16 among other things.  (TAC ¶ 32; TAC Ex. C (ECF No. 49-3) (providing a copy of the

17 1/28/2014 written stipulation for settlement of Plaintiff's first suit against Bank of

18 America ("*Mountjoy I*")).)

19 In July 2014, Plaintiff submitted a loan modification application to Bank of

20 America that was denied.  (*See* Pl.'s Separate Statement of Undisputed Facts Nos. 3–4

21 (ECF No. 103-1) ("Pl.'s SOF") (undisputed); Decl. of Michael Stoltzman ("Stoltzman

22 Decl.") Ex. 4, Pl.'s Dep. Tr. at 73:16–20 (ECF No. 97-3 at 64–161) ("Pl.'s Dep. Tr.").)  In

23 November 2014, Plaintiff submitted another loan modification application.  (*See* Pl.'s

24 SOF No. 5 (undisputed).)  On February 17, 2015, Plaintiff's November 2014

25 application was reviewed, and Plaintiff was determined not "eligible" for a loan

26 modification.  (*See* Pl.'s SOF No. 6 (undisputed); TAC ¶ 54; TAC Ex. J (ECF No. 49-9)

27 ("2/17/2015 Bank of America Ltr. re Pl.'s Loan Appl.") (providing a copy of the

28

2/17/2015 letter from Bank of America to Plaintiff.)  Bank of America did determine, however, that Plaintiff was eligible for a short sale.  (*See* 2/17/2015 Bank of America Ltr. re Pl.'s Loan Appl.)

Meanwhile, Bank of America began foreclosure proceedings, with the Trustee, The Wolf Firm, recording a Notice of Trustee's Sale explaining that the Property would be subject to a foreclosure sale.  (*See* TAC ¶ 28; TAC Ex. G (ECF No. 49-6) (providing a copy of the 9/26/2014 Notice of Trustee's Sale); Def's Req. for Jud. Notice ("RJN") (ECF No. 98) Ex. 14 at 36–44 (providing the same).)  On April 8, 2015, Bank of America conveyed to Federal National Mortgage Association ("Fannie Mae") all beneficial interest under the Deed of Trust, copying Defendant as responsible for receiving payments.  (*See* TAC ¶ 59; TAC Ex. L (ECF No. 49-11) (providing a copy of the 4/8/2015 Assignment of Deed of Trust); Def.'s RJN Ex. 14 at 56 (providing the same).)  As a result, Defendant became the mortgage servicer for Plaintiff's loan.  (*See* Pl.'s SOF No. 45 (undisputed).)  Defendant notified Plaintiff of the change by mail around mid-April.  (*See* TAC ¶ 99; Stoltzman Decl. Ex. 2, Pl.'s Resp. to Def.'s Special Interrog. No. 6 (ECF No. 97-3 at 11–34) ("Pl.'s Resp. to Def.'s Special Interrog.").)  On May 6, 2015, The Wolf Firm posted another Notice of Trustee's Sale, stating that the foreclosure sale would be on June 15, 2015.  (*See* TAC ¶ 62; TAC Ex. M (ECF No. 49-12) (providing a copy of the 5/6/2015 Notice of Trustee's Sale); Def.'s RJN Ex. 14 at 57 (providing the same).)

According to Plaintiff's complaint, corroborated by papers submitted by Defendant into the record, Plaintiff's counsel communicated with Defendant before the foreclosure sale in June 2015.  (*See* TAC ¶ 61; Pl.'s Dep. Tr.at 101:11–24; Pl.'s Resp. to Def.'s Special Interrog. Nos. 1, 7, 12–13, 19, 21, 23, 25.)  According to Plaintiff's Responses to Defendant's Special Interrogatories, "[u]pon notice of transfer of the loan to Seterus[,] [Plaintiff's] counsel contacted Seterus and told them the same thing that she had been telling [Bank of America]'s counsel.  That they had no legal right to charge Plaintiff over 100k in default after [Plaintiff] settled [*Mountjoy I*]."  (Pl.'s

Resp. to Def.'s Special Interrog. No. 7.) "Every day since the loan was transferred to Seterus[,] [Plaintiff] begged and [his] attorney begged in house counsel to resolve" Plaintiff's issues. (Pl.'s Resp. to Def.'s Special Interrog. No. 25.) Later, Plaintiff's counsel worked with Plaintiff to compile and send a "complete" loan modification application to Defendant, although whether the application was in fact complete is disputed. (*See* Pl.'s Decl. ¶¶ 15–16, 39–40; Pl.'s Dep. Tr. at 102:3–23; Pl.'s Resp. to Def.'s Special Interrog. Nos. 1, 25; *see also* TAC ¶ 107; Pl.'s SOF Nos. 9–11 (disputed).)

Plaintiff's counsel sent Defendant a loan modification application by fax on June 12, 2015. (*See* Pl.'s SOF No. 9 (disputing whether it was complete and whether it was sent three days before the foreclosure sale); Pl.'s Opp'n to Def.'s MSJ ("Pl.'s Opp'n") Ex. 1 (ECF No. 103-2) at 2 ("Plaintiff's June 2015 Application") (providing a copy of the cover sheet indicating that the application was faxed on 6/12/2015 around 3:52 PM); *id.* at 13–14 (attached forms contained in loan modification application showing that forms were signed on 6/12/2015); Def.'s RJN Ex. 19 ¶¶ 4, 6–7 ("2022 Harrison Decl."); ECF No. 85-2 (providing the same); *see also* TAC ¶ 107.) Plaintiff and Defendant dispute, however, two issues crucial to Plaintiff's first claim under California's HBOR:

1. Was the June 12, 2015 application complete? (*See* Pl.'s SOF Nos. 9–11. *Compare* Def.'s MSJ at 6; Def.'s Reply to Pl.'s Opp'n to Def.'s MSJ at 4 (ECF No. 105) ("Def.'s Reply"); Janati Decl. ¶¶ 18–19 *with* Pl.'s Decl. ¶¶ 16–18, 39–40 (ECF No. 103-4); 2022 Harrison Decl. Ex. 4 (providing a copy of the fax receipts from when Plaintiff's counsel tried submitting Plaintiff's application); *see also* ECF No. 85-2 at 20–21 (providing the same)); and

2. Was the June 12, 2015 application timely submitted? (*See* Pl.'s SOF Nos. 9, 12. *Compare* Def.'s MSJ at 5; Def.'s Reply at 4; Janati Decl. ¶¶ 18, 20 *with* Pl.'s Decl. ¶ 38).

Aside from the disputes regarding the June 12, 2015 application, Plaintiff and Defendant also dispute the total underlying debt outstanding on Plaintiff's loan. (*See*

Pl.'s SOF Nos. 13, 20–23, 33–35, 39.)  Though ultimately not relevant to the disposition of this Motion, at the heart of this dispute is whether Plaintiff was erroneously charged and therefore whether his loan required an accounting to accurately determine the total outstanding debt.  (*Compare* Pl.'s Opp'n at 4 *with* Def.'s MSJ at 1, 6–11; Def.'s Reply at 4–7.)

Prior to the June 2015 application and foreclosure sale, on April 2, 2015, Plaintiff filed another lawsuit against Bank of America in Sacramento County Superior Court ("*Mountjoy II*").  (*See* ECF No. 1-1.)  Plaintiff brought several claims based on fraud and negligence as in *Mountjoy I*, but Plaintiff added a claim under the California HBOR.  (*Compare* Def.'s RJN Ex. 15 (providing a copy of the verified complaint in *Mountjoy I*) *with* ECF No. 1-1 ¶¶ 39–65.)  Bank of America removed the case to federal court on October 22, 2015.  (ECF No. 1.)  Ultimately, Plaintiff filed his third amended complaint on May 8, 2018, after which he settled his claims against Bank of America and Fannie Mae on July 5, 2018 for $325,000 and voluntarily dismissed them from this action.  (*See* Stoltzman Decl. Ex. A at 2, 9; Notice of Voluntary Dismissal (ECF No. 63).)

With only Defendant remaining, discovery ensued between Plaintiff and Defendant ("the Parties").  On June 17, 2022, Defendant brought the present Motion before the Court.  (*See* Def.'s MSJ; *also* Def.'s RJN.)  The matter is fully briefed and was submitted without oral argument.  (*See* Def.'s MSJ; Pl.'s Opp'n; Def.'s Reply; *see also* ECF Nos. 99, 111.)

## DISCUSSION

### I.   Request for Judicial Notice

#### A.   Standard

Courts may take judicial notice of an adjudicative fact that is "not subject to reasonable dispute."  Fed. R. Evid. 201(b); *see also Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 994 (9th Cir. 2018) ("clarify[ing] when it is proper to take judicial notice of facts in documents, or to incorporate by reference documents in a

complaint, and when it is not[]").  A fact is "not subject to reasonable dispute" if it "(1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).  A court may therefore take judicial notice of matters of public record, but the court may not take judicial notice of disputed facts contained in those public records.  *See Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001*); United States ex rel. Lee v. Corinthian Colleges*, 655 F.3d 984, 999 (9th Cir. 2011) (finding that financial reports submitted by Ernst and Young were not judicially noticeable because Ernst and Young's compliance with the Higher Education Act was an "open question[] requiring further factual development[]").  For example, courts regularly take judicial notice of geography, geographic facts, and official acts. *See Cruz v. Specialized Loan Servicing, LLC*, No. SACV 22-01610-CJC-JDEx, 2022 WL 18228277, at *3 (C.D. Cal. Oct. 14, 2022) (collecting cases).

### B.   Analysis

#### 1.   Judicially Noticed Exhibits

Both Plaintiff and Defendant filed requests for judicial notice of various court orders, documents, and property records.  (*See generally* Pl.'s RJN (ECF No. 103-5); Def.'s RJN.)  As public court or property records, the following exhibits are judicially noticed:

- From Plaintiff's Request, the following exhibits are judicially noticed to the extent stated in each parenthetical:
  - Pl.'s RJN Ex. 1(ECF No. 103-6 at 1–7) (the copy of the 6/8/2021 *ex parte* scheduling order);
  - Pl.'s RJN Ex. 3 (ECF No. 103-6 at 21–27) (the copy of the 1/2/2014 *Mountjoy I* Minute Order on Bank of America's motion for summary judgment);

1
2
3
4

   o Pl.'s RJN Ex. 4 (ECF No. 103-6 at 28–38) (the copy of Fannie Mae's verified complaint for unlawful detainer and Plaintiff's answer, and Fannie Mae's motion for summary judgment in its unlawful detainer suit); and

5
6
7

   o Pl.'s RJN Ex. 5 (ECF No. 103-6 at 57–63) (the copy of Bank of America's 4/4/2012 request and proposed order demanding rent and the related court order on the matter).

8 • From Defendant's Request, the following exhibits are judicially noticed:

9    o Def.'s RJN Ex. 1 (the copy of the 9/1/2004 Deed of Trust);

10   o Def.'s RJN Ex. 2 (the copy of the 5/4/2009 Notice of Default);

11   o Def.'s RJN Ex. 5 (the copy of the 5/31/2012 Notice of Rescission);

12
13   o Def.'s RJN Ex. 8 (the copy of the 4/8/2015 Assignment of Deed of Trust);

14
15   o Def.'s RJN Ex. 9 (the copy of the 5/5/2015 Notice of Trustee's Sale);

16
17   o Def.'s RJN Ex. 10 (the copy of the 6/26/2015 Trustee's Deed upon Sale);

18
19   o Def.'s RJN Ex. 13 (the copy of the 4/8/2020 Order regarding Defendant's Motion to Dismiss);

20
21   o Def.'s RJN Ex. 14 (the copy of the chain of title for the Property from 1/25/2016 and before);

22
23   o Def.'s RJN Ex. 15 (the copy of Plaintiff's 1/9/2012 Complaint in Sacramento Superior County Court); and

24
25   o Def.'s RJN Ex. 18 (the copy of Plaintiff's 4/28/2014 Request for Dismissal).

26 ////
27 ////
28 ////

7

### 2. Documents Not Judicially Noticed

Both Plaintiff and Defendant seek material that is inappropriate for judicial notice. Courts are not to take judicial notice of facts that are subject to reasonable dispute because they cannot be accurately and readily determined from reasonably accurate sources. *See* Fed. R. Evid. 201(b). Plaintiff requests that the Court take judicial notice of a typed 2014 settlement agreement from *Mountjoy I.* (*See* Pl.'s RJN Ex. 2 (ECF No. 103-6 at 8–20).) As a private document whose accuracy cannot be determined, judicial notice of the written settlement agreement would be improper. *Cf. Wheeler v. Premiere Credit of N. Am.*, 80 F. Supp. 3d 1108, 1112 (S.D. Cal. 2015) (taking judicial notice of a federal appellate opinion). Therefore, the Court rejects Plaintiff's request to take judicial notice of the typed *Mountjoy I* settlement agreement. (*See* Pl.'s RJN Ex. 2.)

Plaintiff additionally seeks judicial notice of email communications between Plaintiff's counsel and The Wolf Firm on August 31 and September 1, 2016 regarding Plaintiff's potential lockout and eviction from the Property. (*See* Pl.'s RJN Ex. 2.) However, as private communications between parties, the communications within Plaintiff's Exhibit 2 cannot be easily verified and are not "generally known" within this Court's "territorial jurisdiction." *Cruz*, 2022 WL 18228277, at *3. Moreover, the contents of those communications go to a dispute in this case regarding any damages Plaintiff might have incurred from losing possession of the Property and any personal property as a result, further making judicial notice of these portions of Plaintiff's Exhibit 2 inappropriate. *See Khoja*, 899 F.3d at 1000 ("It is improper to judicially notice a transcript when the substance of the transcript 'is subject to varying interpretations, and there is a reasonable dispute as to what the [transcript] establishes.'" (Citation omitted)).

Similarly, Plaintiff and Defendant seek judicial notice of different declarations from a former member of Plaintiff's counsel, Attorney Kim Harrison. Attorney Harrison,

while still a member of Plaintiff's counsel, submitted a declaration with Plaintiff's

answer to Fannie Mae's unlawful detainer complaint. (*See* Pl.'s RJN Ex. 4 at 36.)  Later,

Attorney Harrison, while no longer a member of Plaintiff's counsel, submitted another

declaration in support of her motion to quash Defendant's deposition subpoena. (*See*

Def.'s RJN Ex. 19 (ECF No. 85-2); *see also* ECF No. 92 (replying to ECF No. 91 in

opposition to ECF No. 85).)  Though both affidavits are court documents, their

contents discuss Plaintiff's loan modification application. (*See* Pl.'s RJN Ex. 4 at 36, ¶3;

Def.'s RJN Ex. 19 ¶4.)  This application is squarely at issue in this case, as the Court

must determine when the application was sent and received, what were its contents,

and whether, when, and how it was reviewed.  *See generally* Cal. Civ. Code §§ 2923.7,

2924.10.  Because the contents of the two declarations by Attorney Harrison go to

material facts at issue in this case, the Court declines to take judicial notice of either

document aside from the fact that each document exists.  *See, e.g.*, *Briseno v. Bonta*,

No. 2:21-cv-09018-ODW, 2022 WL 3348940, at *2 n.3 (C.D. Cal. Aug. 12, 2022).

### 3.  Facts Judicially Noticed

The Court must still decide what facts are judicially noticed within the

documents which the Court has judicially noticed.  "Just because the document itself

is susceptible to judicial notice does not mean that every assertion of fact within that

document is judicially noticeable for its truth." *Khoja*, 899 F.3d at 999.  In Plaintiff's

Request for Judicial Notice, Plaintiff's counsel did not specify facts of which to take

judicial notice from the documents attached to the request. (*See* Pl.'s RJN at 2.)

Neither did Defendant. (*See* Def.'s RJN at 2–3.)  However, as Defendant notes when

objecting to Plaintiff's Request for Judicial Notice, a court "'may not take judicial notice

of proceedings or records in another cause so as to supply, without formal

introduction of evidence, facts essential to support a contention in a cause then before

it.'" (Def.'s Objs. to Pl.'s RJN at 3 (ECF No. 105-2) (quoting *M/V Am. Queen v. San

Diego Marine Construction Corp.*, 708 F.2d 1483, 1491 (9th Cir. 1983) (citations

1   omitted)).)  Here, the Court takes judicial notice of all property records.  *See, e.g.*,

2   *Grant v. Aurora Loan Servs., Inc.*, 736 F. Supp. 2d 1257, 1264 (C.D. Cal. 2010)

3   (collecting cases) (citing cases where a notice of a deed of trust, notice of default,

4   notice of trustee's sale, assignment of deed of trust, and substitution of trustee have

5   been judicially noticed).  For the court records, the Court takes judicial notice of the

6   following facts: (1) the fact that the document exists and was filed with this Court or

7   another court, *see, e.g.*, *Briseno*, 2022 WL 3348940, at *2 n.3; and (2) the date the

8   document was filed, *see, e.g.*, *Hodges v. Hertz Corp.*, 351 F. Supp. 3d 1227, 1234

9   (N.D. Cal. 2018).

10  **II.    Miscellaneous Procedural and Evidentiary Issues**

11  **A.    The Parties' Procedural Objections Are Overruled**

12  Plaintiff and Defendant both brought procedural objections against the other's

13  submissions.  Plaintiff complains that Defendant did not timely file its motion after

14  being ordered to re-file a shorter brief.  (*See* Pl.'s Opp'n at 6.)  Defendant complains

15  that Plaintiff "fail[ed] to cite a 'particular portion[]' of the record in support of [Plaintiff's

16  separate statement of facts.]"  (Def.'s Reply at 2 (citing E.D. Cal. L.R. 260(b)).)  However,

17  these procedural issues and the evidentiary issues discussed below do not prevent

18  this Court from deciding the Motion on the merits.  Even if Plaintiff's failure to respond

19  results in a fact being effectively undisputed, the Court must still determine whether

20  the reasonable inferences from those facts entitle Defendant to summary judgment.

21  *See Heinemann v. Satterberg*, 731 F.3d 914, 917 (9th Cir. 2013) (explaining that

22  amendments to Rule 56 "prohibit the grant of summary judgment 'by default even if

23  there is a complete failure to respond to the motion[]'").

24  **B.    Defendant's Evidentiary Objections Are Overruled**

25  Defendant brings additional evidentiary objections to Plaintiff's exhibits

26  attached to his Opposition and to Plaintiff's Request for Judicial Notice.  (*See

27  generally* Def.'s Objs. to Pl.'s Decl. (ECF No. 105-1); Def.'s Objs. to Pl.'s RJN; Def.'s

28

1    Objs. to Pl.'s Opp'n Ex. 1 (ECF No. 105-3); Def.'s Objs. to Pl.'s Opp'n Ex. 2 (ECF No.

2    105-4).)  Generally, the admissibility of evidence at summary judgment is governed by

3    different rules and different motivations than at trial.  At summary judgment, Rule 56

4    allows objections to evidence when "the material cited . . . cannot be presented in a

5    form that would be admissible in evidence."  Fed. R. Civ. P. 56(c)(2).  The text of the

6    rule suggests that the focus at summary judgment is on the substance, not the form.

7    *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Block v. City of Los Angeles*,

8    253 F.3d 410, 418–19 (9th Cir. 2001).  The party seeking entry of evidence bears the

9    burden of proving that such evidence could be presented in an "admissible" form.

10   *See Pfingston v. Ronan Eng'g Co.*, 284 F.3d 999, 1004 (9th Cir. 2002).  If the opposing

11   party objects, the moving party can direct the court to "authenticating documents,

12   deposition testimony bearing on attribution, hearsay exceptions and exemptions, or

13   other evidentiary principles under which the evidence in question could be deemed

14   admissible . . . ."  *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 385–86 (9th Cir. 2010).

15   But if evidence falls short of "the formalities of Rule 56," a district court still may

16   exercise its discretion "to be somewhat lenient."  *Sch. Dist. No. 1J, Multnomah Cnty.,*

17   *Or. v. ACandS, Inc.*, 5 F.3d 1255,1261 (9th Cir. 1993) (collecting cases).

18                    **1.      Defendant's Objections to Exhibits 1 and 2.**

19         Summary judgment's focus on substance over form makes certain objections

20   unavailing at this stage.  Form objections and objections based on relevance,

21   vagueness, and speculation, if made to the substance of the evidence, are duplicative

22   of Rule 56.  *See* Fed. R. Civ. P. 56(c)(1).  Hearsay objections may also be overruled at

23   summary judgment.  In *Fraser v. Goodale*, 342 F.3d 1032, 1036–37 (9th Cir. 2003), the

24   Ninth Circuit considered the facts contained within a diary that itself would be

25   inadmissible hearsay at trial because the contents of the plaintiff's diary could be

26   revealed at trial through the plaintiff's personal knowledge and testimony, or as a

27   recorded recollection should the plaintiff have failed to remember.  *See id.* at 1037

28

1 (citing Fed. R. Evid. 602, 612, 803(5)).  Foundation and authenticity problems are

2 similarly nonfatal if "the substance could conceivably be made admissible at trial."

3 *Portnoy v. City of Davis*, 663 F. Supp. 2d 949, 953 (E.D. Cal. 2009) (quotation marks

4 omitted).

5 ### a.    Plaintiff's Exhibit 2 Was Considered.

6 Some of Defendant's evidentiary objections fall into the above-mentioned

7 categories.  (*See, e.g.*, Def.'s Objs. to Pl.'s Decl. at 5 (lodging Defendant's fourth

8 objection, which raises foundation and authentication arguments, among others); *id.*

9 at 5 (lodging Defendant's fifth objection, which raises a hearsay objection, among

10 others); Def.'s Objs. to Pl.'s Ex. 1 (raising authentication, foundation, and hearsay

11 objections); Def.'s Objs. to Pl.'s Ex. 2 (raising the same three objections).)  These

12 objections are overruled, as Plaintiff can submit the same evidence in an admissible

13 form at trial.  Plaintiff's Exhibit 2 contains emails between Defendant's employees and

14 Plaintiff's counsel, which can be admissible as opposing party statements to overcome

15 the hearsay challenge and whose factual material can come in as a recorded

16 recollection.  *See Fraser*, 342 F.3d at 1037 (citing Fed. R. Evid. 602, 612, 803(5)); *also*

17 Fed. R. Evid. 801(d)(2).  Therefore, Plaintiff's Exhibit 2 was considered by the Court for

18 summary judgment.

19 ### b.    Objections to Plaintiff's Exhibit 1 Are Moot.

20 Plaintiff's Exhibit 1 contains what Plaintiff claims is the "complete" loan

21 modification application Plaintiff's counsel sent to Defendant on June 12, 2015.  (*See*

22 Plaintiff's June 2015 Application; Pl.'s Opp'n at 10; TAC ¶ 107.)  In resolving the

23 Motion, however, the Court has only relied on the portions of the loan modification

24 application that were submitted by Defendant.  (ECF No. 97-3 at 158-161.)

25 Accordingly, the objections to Plaintiff's Exhibit 1 are moot.[1]

26

27 ───────────────

[1] Plaintiff must provide adequate foundation and authentication at trial to introduce the actual application, and Defendant may re-assert its objections at that time.

28

## 2.    The Objections to Plaintiff's Declaration Are Overruled.

Defendant brought objections to nineteen portions of Plaintiff's Declaration, each objection raising from two to nine arguments.  Judges in the Eastern District of California have often cautioned litigants against terse and reflexive evidentiary objections at summary judgment, especially when the objector is the moving party. *See, e.g.*, *Lindell v. Synthes USA*, 155 F. Supp. 3d 1068, 1071 (E.D. Cal. 2016); *U.S. E.E.O.C. v. Placer ARC*, 114 F. Supp. 3d 1048, 1052–53 (E.D. Cal. 2015); *Hanger Prosthetics and Orthotics, Inc. v. Capstone Orthopedic, Inc.*, 556 F. Supp. 2d 1122, 1126 n.1 (E.D. Cal. 2008); *Burch v. Regents of Univ. of Cal.*, 433 F. Supp. 2d 1110, 1119 (E.D. Cal. 2006).  Defense counsel is encouraged to review these orders to avoid unnecessary and unpersuasive objections in the future.  The Court overrules Defendant's objections, except where stated, for purposes of summary judgment. Defendant may raise the same objections again before trial.

Defendant objected that Plaintiff did not have personal knowledge (*see, e.g.*, objections 1, 3–5), but Plaintiff has personal knowledge of:

- paying Bank of America nearly $56,000 and being evicted from his home (objection number 1);
- the terms of Plaintiff's settlement agreement with Bank of America (objection number 3);
- the contents of the Notice of Rescission for which Defendant requested judicial notice (objection number 4);
- the contents of statements sent to Plaintiff by Defendant (objection number 5);
- Plaintiff's understanding of the terms of the settlement and the way the nearly $56,000 payment would relate to his past due loans (objection number 6);

1    • Plaintiff paying Bank of America $56,000 and that Plaintiff's home was
2         thereafter foreclosed on by Bank of America (objection number 7);
3    • the fact that a former member of Plaintiff's counsel, Attorney Harrison,
4         assisted him in putting together the disputed loan modification
5         application (objection number 8);
6    • the fact that Attorney Harrison and Plaintiff used the most recent
7         information Plaintiff had available at the time in his loam modification
8         application (objection number 9);
9    • Plaintiff's receipt or not of any written information regarding his loan
10        modification application and any missing documents (objection number
11        10);
12   • whether Defendants ever communicated to Plaintiff via his counsel and
13        the contents of those communications, which can be introduced as
14        opposing party statements and as statements of an authorized agent
15        (objection number 11);
16   • whether Plaintiff's credit has been impacted following his dealings with
17        Bank of America and Defendant (objection number 12);
18   • whether Defendant has alleged that Plaintiff has sent a loan modification
19        application before the sale and when Plaintiff sent the loan modification
20        application (objection number 13);
21   • what Plaintiff sent to Defendant with his loan modification application
22        and when (objection number 14);
23   • whether Defendant ever sent Plaintiff notice of his loan modification
24        application being denied or of his right to appeal (objection number 15);
25   • when Defendant took over responsibility for Plaintiff's loan and when
26        Defendant sent Plaintiff notice (objection number 16);
27
28

1    • whether Defendant followed up on Plaintiff's claims that there was little

2       past due on his mortgage (objection number 17);[2] and

3    • whether Plaintiff believes he should be in the Property (objection

4       number 19).

5  These objections are overruled.  (*See* Def.'s Objs. to Pl.'s Decl., Objs. Nos. 1, 3–17, 19.)

6       Defendant objected that Plaintiff did not provide documents to the Court that

7  form the basis of a factual contention (*see* Def.'s Objs. to Pl.'s Decl. at 2–8 (objections

8  1, 3–7, 9, 12–14, 16–17, 19)), but Plaintiff or Defendant provides the necessary

9  documents in their Requests for Judicial Notice and as exhibits attached to the

10  pleadings.  (*See* Pl.'s RJN; Def.'s RJN; Def.'s MSJ (Exhibits 1 and 2); Pl.'s Opp'n

11  (Exhibits 1 and 2); TAC (Exhibits A–N).)  These objections are overruled.

12       Defendant objected that Plaintiff provided improper lay testimony or an

13  improper expert opinion.  (*See* Def.'s Objs. to Pl.'s Decl. at 3–21) (objections 2–3, 5–7,

14  9, 12, 14, 18–19).)  These objections are overruled.  Plaintiff never sought to introduce

15  his testimony as an expert opinion.  Plaintiff also never offered an expert opinion, but

16  is describing his own personal health issues, despite using medical terms, or is

17  describing his personal loan servicing experiences and the status of his finances.

18  (*Compare* Def.'s Objs. to Pl.'s Decl. *with* Pl.'s Decl.)  Therefore, the Rule 702 objections

19  are overruled.

20       Under Rule 701, for opinion testimony by lay witnesses, the testimony must be

21  (1) rationally based on the witness's perceptions, (2) helpful to clearly understanding

22  the witness's testimony or to determining a fact in issue, and (3) not based on

23  scientific, technical, or other specialized knowledge within the scope of Rule 702.  *See*

24  Fed. R. Evid. 701.  As opinion testimony by a lay witness, Plaintiff's Declaration is

25  "rationally based on [his] perception[s,]" is "helpful to understanding [Plaintiff's]

26

27  [2] Defendant's eighteenth objection was sustained as to paragraph 46.  Plaintiff's Declaration at paragraph 46 was stricken and not considered in the Court's analysis because Plaintiff lacks knowledge of the matters alleged and draws legal conclusions.

28

1   testimony [and] to determining [the] fact[s] in issue[,]" is based on Plaintiff's personal

2   experiences, and is "not based on scientific, technical, or other specialized knowledge

3   within the scope of Rule 702."  Fed. R. Evid. 701.  Therefore, Defendant's objections

4   under Rule 701 are overruled.

5           However, certain portions of statements within Plaintiff's Declaration made legal

6   conclusions or arguments, so those portions were stricken from consideration by the

7   Court, thus sustaining:

8       •       Objection Number 4 as to the last two sentences;

9       •       Objection Number 5 as to the portion stating "which I did not owe";

10      •       Objection Number 7 as to the portions where Plaintiff stated "[i]t was

11              clear[,]" "improperly[,]" and "large"; and

12      •       Objection Number 12 as to "damaged".

13  (*See* Def.'s Objs. to Pl.'s Decl. at 5–7, 12.)

14              **3.      Plaintiff's Declaration Is Not a Sham.**

15          Defendant finally argues that Plaintiff's Declaration should not be considered

16  because his sworn Declaration contradicts prior deposition testimony, thus warranting

17  summary judgment for Defendant because Plaintiff thereby failed to provide evidence

18  raising a genuine dispute of material fact.  (*See* Def.'s Reply at 6–7 (citing *Cleveland v.*

19  *Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 806 (1999); *Kennedy v. Allied Mut. Ins. Co.*, 952

20  F.2d 262, 266 (9th Cir. 1991)).)  To accept Defendant's argument requires that the

21  Court "make a finding of fact that [the affidavit] w[as] a 'sham.'"  *Kennedy*, 952 F.2d at

22  267 (remanding the case for the district court to make this finding of fact).  To find that

23  Plaintiff's Declaration "was actually a 'sham[,]'" the Court must find that Plaintiff's

24  subsequent declaration "flatly contradicts [his] earlier testimony in an attempt to

25  'create' an issue of fact and avoid[] summary judgment."  *Id.* (discussing *Foster v.*

26  *Arcata Assocs.*, 772 F.2d 1453 (9th Cir. 1985); *Radobenko v. Automated Equipment*

27  *Corp.*, 520 F.2d 540 (9th Cir. 1975)).  The contradiction or inconsistency between the

28

1  prior testimony and subsequent statement must be "clear and unambiguous to justify

2  striking the affidavit." *Van Asdale v. Int'l Game Tech.*, 577 F.3d 989, 998 (9th Cir.

3  2009).  However, "elaborating upon, explaining or clarifying prior testimony elicited

4  by opposing counsel on deposition" is permitted, and "minor inconsistencies that

5  result from an honest discrepancy, a mistake, or newly discovered evidence afford no

6  basis for excluding an opposition affidavit." *Messick v. Horizon Indus., Inc.*, 62 F.3d

7  1227, 1231 (9th Cir. 1995) (citing *Kennedy*, 952 F.2d at 266–67).

8          Here, the Court finds it more likely that Plaintiff was "confused during their

9  deposition testimony" than trying to lodge a sham affidavit to delay summary

10  judgment. *Van Asdale*, 577 F.3d at 998.  First, several times in Plaintiff's deposition it

11  appeared that Plaintiff was confused about what question was being asked or the

12  sequencing of events.  (*See, e.g.*, Pl.'s Dep. Tr. at 91:2–99.)  Those confusions alone

13  would justify submitting a subsequent affidavit to clarify Plaintiff's prior deposition.

14  *See Messick*, 62 F.3d at 1231.  Second, any inconsistencies are minor, to the extent

15  they exist.  For instance, Defendant makes much about the fact that Plaintiff "has made

16  several damaging admissions regarding his lack of communications (and lack of

17  knowledge of communications) with Defendant." (*See* Def.'s Reply at 3 (citation

18  omitted).)  However, though Plaintiff admitted that Plaintiff himself had no

19  communications whatsoever with Defendant (*see* Pl.'s SOF Nos. 15–16 (disputed)),

20  Plaintiff's Declaration elaborated on his prior testimony indicating that one of his

21  attorney's helped him, "Kim[] or Tanya."  (Pl.'s Dep. Tr. at 102:20; *see* Pl.'s Decl. ¶¶ 12,

22  15 (clarifying that "[he] advised [his] attorneys of the billing issue" and that "[his]

23  attorney's staff person, Kim, assisted in putting the modification packet together[]").)

24  Similarly, Defendant latches upon Plaintiff's apparent admission that Plaintiff was

25  unaware of any facts that would lead him to believe Defendant was put on notice of

26  the need for an audit (*see* Pl.'s SOF No. 17 (disputed)), but Plaintiff stated during his

27  deposition that "I don't know anything about that.  You know – that would be my

28  attorney."  (Pl.'s Dep. Tr. at 143:16–18.)

1    Moreover, Plaintiff elaborated upon his answer regarding the need for an audit

2   by clarifying his prior testimony to explain that there was a dispute between Bank of

3   America and Plaintiff regarding a rent demand or set off that went to court without

4   being resolved apparently. (*Compare* Pl.'s Dep. Tr. at 96:5–99:11 (Plaintiff and

5   Plaintiff's counsel explaining that the dispute over the total outstanding debt arose

6   from Plaintiff not having title to the Property) *with* Pl.'s Decl. ¶ 14 (explaining that Bank

7   of America "had failed to obtain [an] order from the Court for [Plaintiff] to pay any

8   rental amounts during litigation[,] . . . but they were unsuccessful in negotiating it and

9   failed to follow up on their demand for rental payments and apparently dropped the

10   ball[]").) In fact, Plaintiff's Declaration corroborates what Plaintiff earlier stated in his

11   Responses to Defendant's Special Interrogatories. (*See* Pl.'s Resp. to Def.'s Special

12   Interrog. No. 25 ("My attorney was adamant during the negotiation that she would not

13   give a set off to Bank of America and they would have proceeded to trial as this was

14   obvious by Bank of America's own documents that they did not have any right to

15   collect the payments that they failed to obtain and [*sic*] agreement or order from the

16   court . . . .").)

17    Thus, the Court finds that Plaintiff does no more than elaborate upon or clarify

18   earlier deposition testimony where Plaintiff might have been confused when

19   confronted by counsel. Furthermore, to the extent any discrepancies or

20   inconsistencies exist between Plaintiff's deposition transcript and his subsequent

21   Declaration, wherever those discrepancies or inconsistencies are not "clear and

22   unambiguous," those discrepancies and inconsistencies go to Plaintiff's credibility and

23   should be addressed by a jury whose job it is to weigh conflicting evidence. *See Van*

24   *Asdale*, 577 F.3d at 998.

25   ////

26   ////

27   ////

28   ////

18

1    **III.   Summary Judgment**

2        **A.    Standard**

3        The Federal Rules of Civil Procedure provide for summary judgment when "the

4    pleadings, depositions, answers to interrogatories, and admissions on file, together

5    with affidavits, if any, show that there is no genuine issue as to any material fact and

6    that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c);

7    *Celotex*, 477 U.S. at 322.  One of the principal purposes of Rule 56 is to dispose of

8    factually unsupported claims or defenses.  *Celotex*, 477 U.S. at 325.  Therefore, the

9    "threshold inquiry" is whether "there are any genuine factual issues that properly can

10   be resolved only by a finder of fact because they may reasonably be resolved in favor

11   of either party" or conversely "whether it is so one-sided that one party must prevail as

12   a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250–52 (1986).  But

13   "the mere existence of *some* alleged factual dispute between the parties will not

14   defeat an otherwise properly supported motion for summary judgment[.]" *Id.* at 247–

15   48.  "Only disputes over facts that might affect the outcome of the suit under the

16   governing law will properly preclude the entry of summary judgment." *Id.* at 248.

17       In a summary judgment motion, the moving party always bears the initial

18   responsibility of informing the court of the basis for the motion and identifying the

19   portion of the record "which it believes demonstrates the absence of a genuine issue

20   of material fact." *Celotex*, 477 U.S. at 323.  If the moving party meets its initial

21   responsibility, the burden then shifts to the opposing party, which "must establish that

22   there is a genuine issue of material fact . . . ." *Matsushita Elec. Indus. Co. v. Zenith

23   Radio Corp.*, 475 U.S. 574. 585 (1986).  To meet its burden, either party must "(A) cit[e]

24   to particular parts of materials in the record, . . . or (B) show[] that the materials cited

25   do not establish the absence or presence of a genuine dispute, or that an adverse

26   party cannot produce admissible evidence to support the fact." Fed. R. Civ. P.

27   56(c)(1).

28

1    For the opposing party to succeed and avoid summary judgment, the party

2    "must do more than simply show that there is some metaphysical doubt as to the

3    material facts." *Matsushita*, 475 U.S. at 586.  The opposing party must put forth more

4    than "a scintilla of evidence in support of the [party's] position . . . ." *Anderson*, 477

5    U.S. at 252.  Rather, the opposing party must produce enough evidence such that "the

6    'specific facts' set forth by the nonmoving party, coupled with undisputed background

7    or contextual facts, are such that a rational or reasonable jury might return a verdict in

8    its favor based on the evidence." *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors*

9    *Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).  In other words, for the moving party to

10    succeed, the Court must conclude that no rational trier of fact could find for the

11    opposing party. *Matsushita*, 475 U.S. at 587.  However, so as not to "denigrate the

12    role of the jury[,]" "[c]redibility determinations, the weighing of the evidence, and the

13    drawing of legitimate inferences from the facts are jury functions," and so the Court

14    draws all reasonable inferences and views all evidence in the light most favorable to

15    the opposing party. *Anderson*, 477 U.S. at 255; *see Matsushita*, 475 U.S. at 587-88.

16    Defendant seeks summary judgment on Plaintiff's remaining six claims for: (1)

17    violations of the California HBOR (first claim); (2) common law negligence (sixth claim);

18    (3) violations of California's UCL (seventh claim); (4) intentional infliction of emotional

19    distress (eleventh claim); (5) negligent infliction of emotional distress (twelfth claim);

20    and (6) wrongful foreclosure (thirteenth claim). (*See* Def.'s MSJ at 3–13 (argument

21    directed at Plaintiff's first claim under the HBOR); Def.'s MSJ at 13–15 (argument

22    directed at Plaintiff's sixth claim for negligence); Def.'s MSJ at 15 (argument directed

23    at Plaintiff's seventh claim under California's UCL); Def.'s MSJ at 15–18 (argument

24    directed at Plaintiff's eleventh claim for intentional infliction of emotional distress);

25    Def.'s MSJ at 19 (argument directed at Plaintiff's twelfth claim for negligent infliction of

26    emotional distress); Def.'s MSJ at 19–20 (argument directed at Plaintiff's thirteenth

27    claim for wrongful foreclosure).) As the Court will explain, the Court finds that there

28    exists at least one genuine dispute of material fact regarding Plaintiff's first, seventh,

1  eleventh, and thirteenth claims, thus precluding summary judgment.  However, the

2  Court finds that Defendant is entitled to summary judgment on the remaining claims.

3         **B.      First Claim for Remaining Violations of California's HBOR**

4        Plaintiff's first cause of action under the HBOR raises three causes of action

5  based on three separate statutory violations.  With respect to the remaining

6  defendant, Seterus, Incorporated, Plaintiff's first cause of action alleges that Defendant

7  failed to provide a single point of contact as required by California Civil Code section

8  2923.7 in connection with the submission of a June 12, 2015 loan modification

9  application.  Plaintiff's second cause of action under the HBOR further alleges that

10  Defendant failed to provide Plaintiff with acknowledgment of receipt of his

11  application, violating California Civil Code section 2924.10.  Finally, Plaintiff's third

12  cause of action under the HBOR alleges that Defendant improperly relied on a 2009

13  Notice of Default that was rescinded, and that without a proper notice of default,

14  Defendant violated California Civil Code section 2924.

15        The California HBOR "is principally designed to ensure that 'as part of the

16  nonjudicial foreclosure process, borrowers are considered for, and have a meaningful

17  opportunity to obtain, available loss mitigation options, if any, offered by or through

18  the borrower's mortgage servicer, such as loan modifications or other alternatives to

19  foreclosure.'"  *Morris v. JPMorgan Chase Bank, N.A.*, 78 Cal. App. 5th 279, 295 (2022)

20  (quoting Cal. Civ. Code § 2923.4).  "The HBOR lays out a carefully calibrated

21  enforcement mechanism[,]" *Morris*, 78 Cal. App. 5th at 295, which one commentator

22  has noted "[is] detailed and extensive (and in many cases, extraordinarily difficult to

23  navigate)," 5 Miller and Starr, California Real Estate § 185 (4th ed. Dec. 2022 update)

24  ("5 Miller and Starr").

25        Relevant here, the HBOR places two important limitations on the borrower's

26  ability to recover damages.  First, the borrower is limited to relief arising from a

27  "material violation" of a specified provision authorizing relief.  *See* Cal. Civ. Code

28

§ 2924.12(a)–(b) (section authorizing relief against larger financial institutions, with many applicable provisions authorizing relief); Cal. Civ. Code § 2924.19(a)–(b) (section authorizing relief against smaller financial institutions, with few applicable provisions authorizing relief). As interpreted by California courts, a material violation occurs where the violation: (1) affects the borrower's loan obligations, (2) disrupts the borrower's loan modification process, or (3) causes the borrower to suffer harm that she would not have otherwise suffered related to her right to be considered for loss mitigation options. *See, e.g.*, *Morris*, 78 Cal. App. 5th at 304–05 and n.14 (citing and discussing *Billesbach v. Specialized Loan Servicing, LLC*, 63 Cal. App. 5th 830, 837 (2021) and *Cardenas v. Caliber Home Loans, Inc.*, 281 F. Supp. 3d 862 (N.D. Cal. 2017)). Second, the HBOR limits a borrower's damages to "actual economic damages." *See* Cal. Civ. Code § 2924.12(b); Cal. Civ. Code § 2924.19(b); *Morris*, 78 Cal. App. 5th at 303 n.13.

Therefore, to state a cause of action under the HBOR, the borrower must prove: (1) that there was a violation of a specified provision under section 2924.12 for larger financial institutions or section 2924.19 for smaller financial institutions; (2) that the violation of a specified provision was "material;" (3) that there were actual economic damages; and (4) that those actual economic damages "result[ed] from a material violation of" one of the specified provisions. *See* Cal. Civ. Code § 2924.12(b); Cal. Civ. Code § 2924.19(b); *Morris*, 78 Cal. App. 5th at 303–06.

In its Motion for Summary Judgment, Defendant Seterus, Incorporated argues that each of Plaintiff's three causes of action under the HBOR fail as a matter of law. The Court addresses each in turn.

### 1.  Plaintiff Can Show Violations of Section 2923.7.

Plaintiff's first cause of action under the HBOR concerns the requirement that a mortgage servicer provide a single point of contact in connection with a request for a loan modification. (*See* TAC ¶¶ 39, 78–81, 109 (citing Cal. Civ. Code § 2923.7).) That

1 provision as it existed in 2015 provided that "[u]pon request from a borrower who

2 requests a foreclosure prevention alternative, the mortgage servicer shall promptly

3 establish a single point of contact and provide to the borrower one or more direct

4 means of communication with the single point of contact."  Cal. Civ. Code § 2923.7(a)

5 (West 2013).

6      As an initial matter, Defendant argues that Plaintiff was not entitled to a single

7 point of contact with regard to his June 2015 application because Defendant was not

8 required to consider any subsequent applications under California Civil Code section

9 2923.6, for three reasons.  First, Defendant argues that it was not required to review

10 another application from Plaintiff who had already been reviewed four times.  (*See*

11 Def.'s MSJ at 4–5, 11–12; Def.'s Reply at 4, 7.)  Second, Defendant argues that the

12 subsequent loan modification application was not timely submitted.  (*See* Def.'s MSJ

13 at 5, 12; Def.'s Reply at 7.)  Third, Defendant argues that the June 2015 application

14 was not complete.  (See Def.'s MSJ at 5; Def.'s Reply at 4.)  Defendant ultimately

15 argues that since it was not required to consider Plaintiff's application based on any of

16 the three reasons it raises, any violation of the HBOR was not "material," thus

17 precluding liability.  None of these contentions have merit.

18          **a.      Plaintiff Can Show a Material Change in His Finances.**

19      Turning first to the issue presented by Plaintiff's multiple applications, section

20 2923.6(g) generally prohibits "borrowers from submitting multiple applications," and

21 provides that:

22          the mortgage servicer shall not be obligated to evaluate
           applications from borrowers who have already been
23          evaluated or afforded a fair opportunity to be evaluated for
           a first lien loan modification prior to January 1, 2013, or who
24          has been evaluated or afforded a fair opportunity to be
           evaluated consistent with the requirements of this section,
25          unless there has been a material change in the borrower's
           financial circumstances since the date of the borrower's
26          previous application and that change is documented by the
           borrower and submitted to the mortgage servicer.
27

28

1  Cal. Civ. Code § 2923.6(g) (West 2013).  In addition to submitting three prior

2  applications for a loan modification, in November 2014, Plaintiff submitted an

3  application for a loan modification that Bank of America denied on February 17, 2015.

4  Because of these prior applications, Defendant argues that Plaintiff was not entitled to

5  further review, and therefore there can be no liability under the HBOR.  This ignores

6  the exception for borrowers who disclose a material change in financial

7  circumstances.

8          Examining the November 2014 application and the June 2015 application

9  reveals that Plaintiff brought forth evidence of a material change in his financial

10  circumstances.  Generally speaking, conclusory statements are not enough, and "the

11  plaintiff must do more than submit a new loan modification with different financial

12  information." *Saber v. JPMorgan Chase Bank, N.A.*, No. SACV 13-00812-DOC, 2014

13  WL 255700, at *3 (C.D. Cal. Jan. 23, 2014), *aff'd sub nom*, *Saber v. J.P. Morgan Chase*

14  *Bank, N.A.*, 650 F. App'x 527 (9th Cir. 2016); *see also Winterbower v. Wells Fargo*

15  *Bank, N.A.*, No. SA CV 13-0360-DOC, 2013 WL 1232997, at *3 (C.D. Cal. Mar. 27,

16  2013) (noting that "to 'document' and 'submit' a material change in circumstances

17  means more than simply stating one's expenses decreased and then providing two

18  numbers[]").  (*Compare with* Pl.'s SOF Nos. 7–8 (undisputed).)  Most of these cases

19  involve particularized claims of decreased costs or debts.  *See, e.g.*, *Park v. Ocwen*

20  *Loan Servicing, LLC*, No. 15-cv-03400-EDK, 2017 WL 11682614, at *8–9 (N.D. Cal. May

21  10, 2017) (collecting cases in which changes over $1,000 were found sufficient but an

22  $18 change was insufficient, and holding that a $300 change that constituted less than

23  2% of the outstanding debt was not material).  Defendant cites to some of these cases

24  to argue that "Defendant had no duty to review the June 2015 application."  (Def.'s

25  MSJ at 5 (citations omitted).)

26          Here, however, Plaintiff's loan modification application disclosed a claim to a

27  material change: that he was going through his second divorce and that his expenses

28  had changed due to changes in the amount of alimony he was required to pay.  When

comparing Plaintiff's loan modification applications submitted to Defendant (*see* Pl.'s Dep. Tr. Ex. 24) and to Bank of America (Pl.'s Dep. Tr. Ex. 18), there are some crucial differences.  The Parties do not dispute that Plaintiff's monthly income is the same in his November 2014 application with Bank of America that was reviewed and denied in February 2015 and in his June 2015 application with Defendant.  (*See* Pl.'s SOF No. 7 (undisputed).)  However, Plaintiff's applications show what appears to be a four-digit difference in alimony payments – from $13,000 temporarily and then $1,400 in his first application with Bank of America (*see* Pl.'s Dep. Tr. Ex. 18 at 2), to what appears to be either $9,689 or $4,489 in his second application with Defendant (*see* Pl.'s Dep. Tr. Ex. 24 at 2).  That is, though Plaintiff's monthly income figures were the same, his costs had changed by thousands of dollars, which courts have held is sufficient to show a material change in a borrower's financial circumstances.  *See Park*, 2017 WL 11682614, at *8-9 (collecting cases).

Accordingly, Plaintiff was permitted to file a subsequent application even after the November 2014 application was denied, and Defendant was obligated to review it.  *See* Cal. Civ. Code § 2923.6(c)-(g).

### b.    Plaintiff's Application Was Timely.

Plaintiff also timely submitted his loan modification application.  In arguing to the contrary, Defendant appears to rely on a version of section 2923.6 that was not in effect at the time Plaintiff filed his application.  (*See* Def.'s MSJ at 5 (quoting Cal. Civ. Code § 2923.6(c) (West 2019).)  While the current version of section 2923.6 only applies to a loan modification application submitted "at least five business days before the scheduled foreclosure sale," Cal. Civ. Code § 2923.6(c) (West 2019), the prior version contained no such time limitation.  *See* Civ. Code § 2923.6(c) (West 2013).[3]

---

[3] The current language reads, in relevant part: "If a borrower submits a complete application for a first lien loan modification offered by, or through, the borrower's mortgage servicer *at least five business days before a scheduled foreclosure sale*, a mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent shall not record a notice of default or notice of sale, or conduct a trustee's sale, while the complete first lien loan modification application is pending."  Cal. Civ. Code § 2923.6(c) (West 2019) (emphasis added).  The language in effect in June 2015, however, read in relevant part: "If a

1    Furthermore, the California Legislature was clear that the changes made in 2018 did

2    not apply retroactively, expressly stating:

3                    It is the intent of the Legislature that any attachment,
                    addition, or repeal of a section or part of a section enacted
4                    by Senate Bill 900 (Chapter 87 of the Statutes of 2012) and
                    Assembly Bill 278 (Chapter 86 of the Statutes of 2012),
5                    commonly known as the California Homeowner Bill of Rights,
                    that took effect as of January 1, 2018, shall not have the effect
6                    to release, extinguish, or change, in whole or in part, any
                    liability that shall have been incurred under that section, or
7                    part of a section, prior to January 1, 2018, unless the
                    amendment, addition, or repeal expressly so provides.  The
8                    section, or part of a section, that was amended, added, or
                    repealed shall be treated as still remaining in force for the
9                    purpose of sustaining any proper action, suit, or proceeding
10                   for the enforcement of such a liability, as well as for the
                    purpose of sustaining any judgment, decree, or order.
11

12

13   2018 Cal. Legis. Serv. Ch. 404 § 26 (S.B. 818) (West).

14          "California courts comply with the legal principle that unless there is an express

15   retroactivity provision, a statute will not be applied retroactively unless it is very clear

16   from extrinsic sources that the Legislature . . . must have intended a retroactive

17   application."  *Myers v. Philip Morris Cos., Inc.*, 28 Cal. 4th 828, 841 (2002).  There is no

18   indication of any legislative intent regarding retroactivity.  In fact, the only indication of

19   retroactivity is that any claims existing under a prior version of the statute "shall be

20   treated as still remaining in force for the purpose of sustaining any proper action, suit,

21   or proceeding for the enforcement of such a liability . . . ."  2018 Cal. Legis. Serv. Ch.

22   404 § 26.

23   ////

24   ////

25   ────────────────

26   borrower submits a complete application for a first lien loan modification offered by, or through, the
     borrower's mortgage servicer, a mortgage servicer, mortgagee, trustee, beneficiary, or authorized
27   agent shall not record a notice of default or notice of sale, or conduct a trustee's sale, while the
     *complete* first lien loan modification application is pending."  Cal. Civ. Code § 2923.6(c) (West 2013)
28   (emphasis added).

1    Accordingly, Plaintiff timely submitted his loan modification application to

2    Defendant,[4] and Defendant was obligated to review it.  *See* Cal. Civ. Code

3    § 2923.6(c)–(g) (West 2013).

4          c.    **A Jury Could Find Plaintiff's Application Was Complete.**

5    Finally, Defendant argues that there was no material violation of the HBOR

6    because Plaintiff's June 12, 2015 Application was incomplete.  California Civil Code

7    section 2923.6(c) applies to a "complete" application to trigger the bar on a trustee's

8    sale while an application is pending.  Subsection (h), in turn, defines "complete" as

9    "when a borrower has supplied the mortgage servicer with all documents required by

10   the mortgage servicer within the reasonable timeframes specified by the mortgage

11   servicer."  Cal. Civ. Code § 2923.6(h) (West 2013 and 2019).  Defendant states that

12   Plaintiff's June 12, 2015 Application was missing two months of bank statements and

13   documentation showing his receipt of his claimed social security income.  (*See*

14   Stoltzman Decl. ¶ 18; Def.'s Reply at 4.)  Plaintiff disputes this fact, asserting that he

15   submitted a complete application that contained "the Uniform Borrower Assistance

16   form, a hardship letter, bank statements, income and expenses, requests for tax

17   transcripts, Home Affordable Modification Program, govt monitoring data form, pay

18   statements from my employer, pension fund."  (Pl.'s Resp. to Def.'s Special Interrog.

19   No. 1; *see also* Pl.'s Decl. ¶¶15–16.)  The HBOR requires the mortgage servicer to

20   define a "complete" application and establish a timeline for submitting a "complete"

21   application.  *See* Cal. Civ. Code § 2923.6(h).  In the absence of any documents or

22   communications showing that Plaintiff was informed what made a "complete"

23   application, the Court leaves this issue for a jury, as Plaintiff has brought evidence

24   from which a reasonable jury could find that Plaintiff submitted a "complete"

25   application.

26   _____

27   [4] The Court notes that Defendant concedes that it did in fact review Plaintiff's application.  (*See* Def.'s MSJ at 5; *also* Def.'s Reply at 4; Pl.'s SOF Nos. 9–11 (disputed).)  Accordingly, Defendant also cannot argue that there was insufficient time to consider Plaintiff's application.

28

1    Even if a reasonable jury could find that Plaintiff's application was incomplete, a

2    reasonable jury could conclude that any omission flowed from Defendant's failure to

3    provide a single point of contact if Plaintiff was entitled to one (which he was (*see* ECF

4    No. 67 at 7 (citations omitted))).  The HBOR requires that the single point of contact be

5    responsible for five tasks that generally require that the single point of contact serve

6    as the document and information intermediary for the borrower.  *See generally* Cal.

7    Civ. Code § 2923.7(b)(1)–(5).  The provisions in section 2923.7(b) through (d) thereby

8    seeks to prevent the borrower from "being given the run around, being told one thing

9    by one bank employee while something entirely different is being pursued by

10   another."  *Jolley v. Chase Home Fin., LLC*, 213 Cal. App. 4th 872, 905 (2013).  If the

11   single point of contact is competent as to its five responsibilities, that should enable

12   the mortgage servicer and the relevant financial institutions servicing the loan to not

13   violate the provisions targeting "dual tracking."  "Dual tracking refers to a common

14   bank tactic[] [whereby] [w]hen a borrower in default seeks a loan modification, the

15   institution often continues to pursue foreclosure at the same time."  *Jolley*, 213 Cal.

16   App. 4th at 904 (citations omitted).  Section 2923.6 seeks to ameliorate the problems

17   of dual tracking by imposing several procedures that require the mortgage servicer to

18   review a loan modification application, determine the borrower's eligibility for relief,

19   provide a timeline to appeal the decision, and, if the application is "complete" as

20   defined by the mortgage servicer under California Civil Code section 2923.6(g), to

21   postpone further action in the foreclosure process until the borrower is offered loan

22   modification alternatives or has exhausted the available loss mitigation options.  *See*

23   Cal. Civ. Code § 2923.6(c).

24   All this is to say that the whole point of a single point of contact is to prevent

25   what may have happened here: a failure to provide certain pieces of information

26   required by the loan servicer to process an application.  Defendant cannot argue a

27   violation of section 2923.7 is not material because of a mistake that section 2923.7

28   was designed to prevent in the first place.

1

### d.   Defendant Materially Violated Section 2923.7.

2   Defendant next argues that even if the subsequent application was timely,

3   Plaintiff has failed to show how a violation of section 2923.7 was material.  Defendant

4   points to the fact that when asked how the violation of section 2923.7 was material,

5   Plaintiff pointed to the failure of Defendant to conduct an audit as he allegedly

6   requested.  (*See* Def.'s MSJ at 6.)  Defendant then devotes much of its Motion to

7   arguing that any such audit would have shown that Plaintiff was given credit for all

8   payments made, and that, in any event, Plaintiff was barred from litigating the issue

9   based on the prior settlement and principles of *res judicata*.  These audit-related

10   arguments, however, have no merit.

11   Defendant's argument appears to conflate the requirement that the violation be

12   a material one, which is a question of law, with the requirement that the Plaintiff

13   experience actual economic damages, which is a question of fact.  In *Morris*, the trial

14   court similarly confused the two terms, granting a demurrer for failure to allege

15   "material 'actual economic' damages."  *Morris*, 78 Cal. App. 5th at 303.  As the court of

16   appeal noted in reversing that decision, California Civil Code section 2924.12(b)

17   provides that a defendant "shall be liable to a borrower for *actual economic*

18   *damages . . . resulting from a material violation of* [specified sections]."  Cal. Civ. Code

19   § 2924.12(b) (emphasis added).  According to the court of appeal, to show actual

20   economic damages, a plaintiff must only show that she "suffered detriment from the

21   unlawful act or omission of another ([Cal. Civ. Code] § 3281) on facts allowing a

22   reasonable inference that the detriment was 'economic' in nature."  *Morris*, 78 Cal.

23   App. 5th at 303.  A material violation of section 2923.7, however "is one that affected

24   the borrower's loan obligations, disrupted the borrower's loan modification process,

25   or otherwise harmed the borrower."  *Id.* at 304 (quoting *Billesbach*, 63 Cal. App. 5th at

26   837.)  As explained in *Billesbach*, this simply means that "the HBOR creates no liability

27   for a technical violation that does not thwart its purposes."  *Billesbach*, 63 Cal. App.

28

5th at 845.  Here, Defendant has not provided any facts to suggest that a single point of contact was provided to Plaintiff.  Unlike a single point of contact that might have failed to meticulously comply with the requirements of section 2923.7, the complete failure to provide such a contact is a material violation of that section as a matter of law.

To summarize: Defendant was required to consider Plaintiff's loan modification, which was timely submitted.  A reasonable jury could conclude the Plaintiff's loan modification was complete, or that a lack of completeness is excusable given the failure to appoint a single point of contact.  Finally, the alleged violation is material.  Accordingly, Defendant's Motion for Summary Judgment regarding the first cause of action under the HBOR, violations of California Civil Code section 2923.7, is DENIED.

### 2.      Plaintiff Can Show Violations of Section 2924.10.

In his second cause of action, Plaintiff further alleges violations of California Civil Code section 2924.10(a), which states that "[w]hen a borrower submits a complete first lien modification application or any document in connection with a first lien modification application, the mortgage servicer shall provide written acknowledgment of the receipt of the documentation within five business days of receipt."  In its Motion for Summary Judgment, similar to the arguments as to section 2923.7, Defendant argues (1) that Plaintiff has not shown any facts to support the alleged violation; (2) that Plaintiff was not entitled to a review of his application or a loan modification; and (3) that compliance would not have assisted Plaintiff.

First, Plaintiff has pled facts sufficient for a jury to find violations of section 2924.10.  In his Declaration, Plaintiff stated: "I never received any thing in writing from Seterus confirming they received the packet." (Pl.'s Decl. ¶ 17.)  Plaintiff also stated that Defendant did not communicate with him that the loan modification package was missing any information, and that he did not find out the modification was denied until being served with an eviction notice.  (Pl.'s Decl. ¶¶ 18–19.)  This is sufficient for a

1    reasonable jury to find violations of section 2924.10.  Second, for the reasons stated

2    above in connection with the alleged violations of section 2923.7, Plaintiff was entitled

3    to a review of his loan modification application.  *See supra* Part III.B.1.a.

4        Finally, any violations were material.  As with section 2923.7, Defendant

5    completely failed to meet any of the requirements of section 2924.10.  As such, any

6    violations were material as a matter of law.  While Defendant is correct that the "letter

7    could have been sent after the trustee's sale and Defendant would have remained in

8    compliance with section 2924.10" (Def's MSJ at 12), that goes to Plaintiff's actual

9    economic damages, if any.

10        Accordingly, Defendant's Motion for Summary Judgment regarding the second

11    cause of action under the HBOR, violations of California Civil Code section 2924.10, is

12    DENIED.

13                **3.        The HBOR Does Not Authorize Relief Under Section 2924.**

14        As Defendant notes, the California HBOR specifically delineates which

15    provisions of the statutory regime permit monetary damages for a material violation.

16    (*See* Def.'s MSJ at 12–13; Def.'s Reply at 7–8.)  Section 2924.12 provides monetary

17    damages following the recording of a Trustee's Deed Upon Sale for violations of

18    sections 2923.55, 2923.6, 2923.7, 2924.9, 2924.10, 2924.11, and 2924.17.  *See* Cal.

19    Civ. Code § 2924.12(b).  Because section 2924 is not included within that list, Plaintiff

20    may not pursue an action for monetary damages on this ground.  *See Penermon v.*

21    *Wells Fargo Bank, N.A.*, 47 F. Supp. 3d 982, 997 (N.D. Cal. 2014); *Zeppeiro v. Green*

22    *Tree Servicing, LLC*, 679 F. App'x 592, 593 (9th Cir. 2017) (Mem.); *Orosco v.*

23    *Specialized Loan Servicing, LLC*, No. 2:20-cv-00743-KJM-EFB, 2020 WL 4898054, at *2

24    (E.D. Cal. Aug. 20, 2020).

25        Accordingly, Defendant's Motion for Summary Judgment regarding the third

26    cause of action under the HBOR, violations of California Civil Code section 2924, is

27    GRANTED.

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**C.     Sixth Claim for Negligence**

In his sixth cause of action, Plaintiff alleges that Defendants (presumably, including Seterus) breached a duty of care to Plaintiff by misrepresenting the amount of money owed to him and by sending Plaintiff a Notice of Trustee's Sale after assuring him that they would not foreclose until they had completed an accurate accounting of the amount owed.  (TAC ¶¶ 148–50.)  Negligence under California law requires the plaintiff to prove: (1) that the plaintiff was owed a duty; (2) that that duty was breached; and (3) "that the breach was a proximate or legal cause of their injuries." *Merrill v. Navegar, Inc.*, 26 Cal. 4th 465, 477 (2001) (citation omitted).

While this Court previously denied Defendant's motion to dismiss after finding that Defendants owed Plaintiff a duty of care (*see* ECF No. 67 at 12–13; ECF No. 44 at 18), the California Supreme Court has overruled the California cases on which those prior orders relied.  *See Sheen v. Wells Fargo Bank, N.A.*, 12 Cal. 5th 905, 948 (2022). The California Supreme Court addressed the first question of whether a "lender owe[s] a borrower a tort duty sounding in general negligence principles to . . . 'process, review and respond carefully and completely to [a borrower's] loan modification application,' such that upon a breach of this duty the lender may be liable for the borrower's economic losses . . . ."  *Id.* at 915.  The California Supreme Court held that there is no such duty between a lender and borrower.  *See id.*

Plaintiff argues that *Sheen* does not dictate the outcome in this case.  (*See* Pl.'s Opp'n at 10–11.)  It plainly does.  First, Plaintiff claims that the duty alleged in his complaint is not based on "losing documents or not handling his modification with care.  It is [Defendant's] denial of the modification without any investigation into whether Plaintiff's lawyers were correct in the history of the loan and the most recent litigation."  (Pl.'s Opp'n at 10–11.)  It is not clear to the Court how a claim to a duty to "investigate" Plaintiff's assertions regarding his loan modification application is any different from the duty proposed and rejected in *Sheen*: "to process, review and

1    respond carefully and completely to the loan modification applications Plaintiff

2    submitted." *Sheen*, 12 Cal. 5th at 915.  To review the loan modification and to

3    respond carefully and completely to it would seem to require investigating any claims

4    raised by the borrower or in the borrower's application.  Even if there were daylight

5    between the two, Plaintiff does not demonstrate how these are not purely economic

6    losses, the kind of which the *Sheen* Court concluded are not typically the kind of

7    losses cognizable in negligence actions.  *Sheen*, 12 Cal. 5th at 920.  Having found that

8    the California Supreme Court has already rejected recognizing such a duty, this Court

9    declines to do so.

10          Therefore, the Court GRANTS Defendant's Motion for Summary Judgment on

11   Plaintiff's sixth cause of action.

12          **D.      Seventh Claim Under California's Unfair Competition Law**

13          To state a cause of action for unfair competition under California's UCL, a

14   plaintiff must allege an "unlawful, unfair, or fraudulent business act or practice" or

15   "unfair, deceptive, untrue, or misleading advertising."  Cal. Bus. and Prof. Code

16   § 17200.  California's UCL "borrow[s] violations of other laws and treats" them as

17   unlawful business practices "independently actionable under section 17200." *Farmers*

18   *Ins. Exch. v. Sup. Ct.*, 2 Cal. 4th 377, 383 (1992) (quotation marks omitted).  As

19   Defendant recognizes, Plaintiff's cause of action under California's UCL is "derivative

20   of the allegations described [in the third amended complaint.]"  (Def.'s MSJ at 15

21   (citing TAC ¶¶ 157–58).)  Because the Court finds that triable issues of fact exist

22   regarding Plaintiff's cause of action under the HBOR (and later under Plaintiff's causes

23   of action for intentional infliction of emotional distress and wrongful foreclosure),

24   Plaintiff's derivative cause of action under California's UCL remains viable.

25          Therefore, the Court DENIES Defendant's Motion for Summary Judgment on

26   Plaintiff's seventh cause of action.

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### E.     Eleventh Claim for Intentional Infliction of Emotional Distress

A cause of action for intentional infliction of emotional distress ("IIED") requires: (1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard for the probability of causing emotional distress; (2) the plaintiff suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct." *Potter v. Firestone Tire and Rubber Co.*, 6 Cal. 4th 965, 1001 (1993) (citation and quotation marks omitted).  The tort of IIED has a high threshold.  For conduct to be "outrageous" requires it to be "so extreme as to exceed all bounds of that usually tolerated in a civilized community." *Id.* (citation omitted).  For the emotional distress to be "severe or extreme" requires it to be "of such substantial quality or enduring quality that no reasonable [person] in civilized society should be expected to endure it." *Potter*, 6 Cal. 4th at 1004 (quotation marks omitted).  Despite the generally high threshold, Plaintiff has produced evidence sufficient to create a triable issue of fact regarding Defendant's conduct and Plaintiff's distress.

First, for the outrageous conduct, courts generally hold as a matter of law that foreclosing on a home and acts incidental to that *legal* process do not count as "outrageous" conduct. *See, e.g.*, *Reyes v. Nationstar Mortg. LLC*, No. 15-CV-01109, 2015 WL 7015571, at *3 (N.D. Cal. Nov. 12, 2015) (collecting cases). *Cf.* Cal. Civ. Code § 2924(b) ("In performing acts required by this article, the trustee shall incur no liability for any good faith error resulting from reliance on information provided in good faith by the beneficiary regarding the nature and the amount of the default under the secured obligation, deed of trust, or mortgage.  In performing the acts required by this article, a trustee shall not be subject to [the Rosenthal Fair Debt Collection Practices Act].").  However, where the defendant's right to foreclose is at issue, as in this case, as explained below, *see infra* Part III.G, courts hold that such conduct can be the basis of an IIED claim. *See, e.g.*, *Ragland v. U.S. Bank Nat'l Ass'n*,

1   209 Cal. App. 4th 182, 204–05 (2012) (declining to grant the defendant's motion for

2   summary judgment where the plaintiff established triable issues of fact on her causes

3   of action for, relevant here, a provision of the nonjudicial foreclosure statutes, Cal. Civ.

4   Code § 2924g(d)); *Spinks v. Equity Residential Briarwood Apartments*, 171 Cal. App.

5   4th 1004, 1045–46 (2009) (reversing the trial court's grant of summary judgment for

6   the defendant where the defendant "chang[ed] the locks on someone's dwelling

7   without consent to force that person to leave [a]s prohibited by statute[]").

8          Here, Plaintiff asserts that Defendant's "conduct became outrageous when one

9   looks at the lengths to which . . . Seterus went to conceal the fact that they had

10   rescinded the Notice of Default that the parties continued to use to foreclose/evict Mr.

11   Mountjoy." (TAC ¶ 188; *see also* Pl.'s Decl. ¶¶ 43–44; Pl.'s Resp. to Def.'s Special

12   Interrog. Nos. 7, 13–16; Pl.'s Dep. Tr. at 65:19–66:22.) The record and Defendant's

13   position in this Motion support this argument, as Defendant has continuously

14   proceeded as though a valid Notice of Default existed, even though the Notice of

15   Rescission also rescinded any declaration of defaults, which would also rescind any

16   Notices of Default. *See infra* Part III.G (citing Def.'s RJN Ex. 14 at 74; Cal. Civ. Code

17   § 2924c(a)(2); 5 Miller and Starr § 13:230). Because Defendant violated a statutory

18   requirement, Defendant therefore engaged in *unlawful* conduct incident to the

19   foreclosure process that is actionable under an IIED theory of liability. *See Ragland*,

20   209 Cal. App. 4th at 205 (citing Cal. Civ. Code § 2924g(d)).

21          Moreover, as stated earlier, the record shows that Plaintiff tried raising several

22   issues with Defendant, thereby putting it on notice that there was an issue with the

23   amount claimed at default, which would necessarily raise issues about the Notice of

24   Default. (*See, e.g.*, Pl.'s Resp. to Def.'s Special Interrog. No. 7 ("Upon notice of transfer

25   of the loan to Seterus my counsel contacted Seterus and told them the same thing she

26   had been telling [Bank of America]'s counsel. That they had no legal right to charge

27   Plaintiff over 100k in default after we settled the case."); *see also* Pl.'s Opp'n Ex. 2

28   (providing a copy of email communications between Defendant's in-house counsel

1   and Plaintiff's counsel on 6/23/2015, before the sale was finally recorded, by which

2   time Plaintiff's counsel conclusively put Defendant on notice).)  The notice of a

3   potential issue with the Notice of Default and of potential issues with Plaintiff's health

4   (*see, e.g.*, Pl.'s Resp. to Def.'s Special Interrog. Nos. 8, 11), plus the continued and

5   completed violation of a statutory requirement is enough to create a material issue

6   regarding the outrageousness of Defendant's conduct.  *See Potter*, 6 Cal. 4th at 1002–

7   03.

8       Second, for the extreme distress, the California Supreme Court has held that

9   "discomfort, worry, anxiety, upset stomach, concern, and agitation" are not enough.

10  *Hughes v. Pair*, 46 Cal. 4th 1035, 1051 (2009).  (*Compare with* Pl.'s Decl. ¶ 33 ("As time

11  went on, I became more stressed, anxious and depressed.").)  However, Plaintiff does

12  sufficiently allege physical distress to bring a triable issue regarding severe or extreme

13  emotional distress, as when he claims that he "began having heart pains, lost sight in

14  one and then both eyes and finally was in such pain [he] took [him]self to the hospital."

15  (Pl.'s Decl. ¶ 34; *see also* Pl.'s Decl. ¶ 35 ("I was in the hospital for emergency surgery.

16  It was the most pain I have ever experienced in my life.").)

17      The Court therefore DENIES Defendant's Motion for Summary Judgment on

18  Plaintiff's eleventh cause of action for intentional infliction of emotional distress.

19      **F.     Twelfth Claim for Negligent Infliction of Emotional Distress**

20      Because "[t]here is no independent tort of negligent infliction of emotional

21  distress[,]" the Plaintiff must still establish that there is a duty owed to the plaintiff.

22  *Ragland*, 209 Cal. App. 4th at 205 (quoting *Potter*, 6 Cal. 4th at 984).  Because there is

23  no common-law duty between Plaintiff and Defendant (see *supra*, Part III.C), Plaintiff's

24  twelfth cause of action must also fail.

25      The Court therefore GRANTS Defendant's Motion for Summary Judgment on

26  Plaintiff's twelfth cause of action for negligent infliction of emotional distress.

27

28

1

G.     **Thirteenth Claim for Wrongful Foreclosure**

2      Plaintiff's thirteenth cause of action alleges unlawful foreclosure, arguing that

3  Defendant knew the information provided by Bank of America was inaccurate and did

4  not warrant foreclosure.  Generally, to state a claim for wrongful foreclosure, the

5  plaintiff must prove: (1) that the trustee or mortgagee caused an illegal, fraudulent, or

6  willfully oppressive sale of real property under a power of sale in a mortgage or deed

7  of trust; (2) that the plaintiff was prejudiced or harmed; and (3) in cases where the

8  trustor or mortgagor challenges the sale, that the trustor tendered the outstanding

9  debt or was excused from doing so.  *See Miles v. Deutsche Bank Nat'l Trust Co.*, 236

10  Cal. App. 4th 394, 408 (2015); *also* 5 Miller and Starr § 13:254 (providing the same

11  three elements and collecting cases).  Plaintiff has provided sufficient information to

12  meet each of these three elements.

13      First, there is evidence that Defendant caused an illegal, fraudulent, or willfully

14  oppressive sale.  Critically, Defendant failed to provide Plaintiff with a proper Notice of

15  Default in violation of the nonjudicial foreclosure statutes.  *See* Cal. Civ. Code

16  § 2924(a)(1).  This failure is not some technical defect but is an essential element of the

17  nonjudicial foreclosure system.  *See Morris*, 78 Cal. App. 5th at 294 ("California's

18  system of nonjudicial foreclosure . . . is founded upon and presupposes adequate–

19  and thus constitutionally valid–presale notice." (citations omitted)).  Defendant argues

20  that the 2012 rescission did not also rescind the 2009 Notice of Default because it

21  does not say so on the text of the Note.  (*See* Def.'s MSJ at 17 ("Specifically, that

22  document was titled 'NOTICE OF RESCISSION of Trustee's Deed Upon Sale' (not

23  'NOTICE OF RESCISSION if [*sic*] Notice of Default AND Trustee's Deed Upon Sale').");

24  *also* TAC Ex. B (ECF No. 49-2) (providing a copy of the 5/31/2012 Notice of

25  Rescission); Def.'s RJN Ex. 5 (providing the same); Pl.'s SOF Nos. 50–53 (undisputed

26  except for No. 50).)  However, in Plaintiff's subsequent Note of Deed of Trust and

27  Assignment of Rents executed on December 14, 2004, the Deed of Trust states:

28

1           Lender may rescind any notice before Trustee's sale by
2    executing a notice of rescission and recording the same.  The
     recordation of such notice shall constitute also a cancellation
3    of any prior declaration of default and demand for sale, and
     of any acceleration of maturity of indebtedness affected by
4    any declaration or notice of default.

5    (Def.'s RJN Ex. 14 at 74 (section 3g of the Deed of Trust).)  *See also* Cal. Civ. Code

6    § 2924c(a)(2) ("If the trustor, mortgagor, or other person authorized to cure the

7    default . . . does cure the default, the beneficiary or mortgagee or the agent . . . shall,

8    within 21 days following the reinstatement, execute and deliver to the trustee a notice

9    of rescission that rescinds the declaration of default and demand for sale and advises

10   the trustee of the date of reinstatement."); 5 Miller and Starr § 13:230 (stating the

11   same).  This language indicates that there was no valid Notice of Default under the

12   terms of the Deed of Trust at the time Bank of America and later Defendant again

13   began nonjudicial foreclosure proceedings against Plaintiff.  Accordingly, Plaintiff has

14   satisfied the first element of demonstrating the illegality of the Trustee's sale.

15          Plaintiff has also presented sufficient evidence that he was prejudiced or

16   suffered harm.  It is clear that Plaintiff was actively seeking a loan modification in the

17   days leading up to the sale.  (*See* Pl.'s Dep. Tr. at 144:12–17; Pl.'s Resp. to Def.'s

18   Special Interrog. No. 1 ("When the loan transferred to Seterus my counsel asked

19   Seterus for a modification application to be sent to me."); Pl.'s Resp. to Def.'s Special

20   Interrog. Nos. 7–8, 11–12.)  Had Plaintiff been properly noticed of the default, a fact

21   finder could reasonably conclude that he would have continued taking steps to secure

22   a loan modification or taken other means to "save [the] equit[y] in [his] home."

23   *Magnus v. Morrison*, 93 Cal. App. 2d 1, 3 (1949).

24          Finally, the Court concludes that Plaintiff is excused from the tender rule as a

25   matter of law.  "An allegation of tender of the indebtedness is necessary when the

26   person seeking to set aside the foreclosure sale asserts the sale is voidable due to

27   irregularities in the sale or notice procedure."  *West v. JPMorgan Chase Bank, N.A.*,

28

214 Cal. App. 4th 780, 801-02, (2013) (citations omitted); *see also Karlsen v. Am. Sav. and Loan Ass'n*, 15 Cal. App. 3d 112, 117 (1971) ("A valid and viable tender of payment of the indebtedness owing is essential to an action to cancel a voidable sale under a deed of trust."  (citations omitted)).  This "tender rule" prevents "a court from uselessly setting aside a foreclosure sale on a technical ground when the party making the challenge has not established his ability to purchase the property." *Magdaleno v. Indymac Bancorp, Inc.*, 853 F. Supp. 2d 983, 991 (E.D. Cal. 2011) (citation omitted)). An exception to the tender requirement exists where the sale is void, however. *Glaskski v. Bank of America*, 218 Cal. App. 4th 1079, 1100 (2013); *see also* 5 Miller and Starr § 13:256.  Under California law, a sale is not rendered void merely because of minor or technical defects. *Knapp v. Doherty*, 123 Cal. App. 4th 76, 95-99 (2004).  "A sale is rendered void, though, when the defects are substantial, such as when there has been a failure to give notice of sale to the trustor or to specify the correct default in the notice of default." *Ram v. OneWest Bank, FSB*, 234 Cal. App. 4th 1, 19 (2015). That is the case here.  Thus, Plaintiff's failure to tender the amount of indebtedness is excused.

Further supporting finding the sale void and not merely voidable is that neither the statutory presumption nor the conclusive common law presumption of finality in favor of the foreclosure sale apply in this case.  Typically, "[i]f the trustee's deed recites that all statutory notice requirements and procedures required by law for the conduct of the foreclosure have been satisfied, a rebuttable presumption arises that the sale has been conducted regularly and properly; this presumption is conclusive as to a bona fide purchaser." *Biancalana v. T.D. Serv. Co.*, 56 Cal. 4th 807, 814 (2013) (citation omitted).  Crucially, however, "the conclusive presumption [in favor of a nonjudicial foreclosure sale to a bona fide purchaser] does not apply until a trustee's deed is delivered.  Thus, if there is a defect in the procedure which is discovered after the bid is accepted, but prior to the delivery of the trustee's deed, the trustee may abort a sale to a bona fide purchaser, return the purchase price and restart the

1     foreclosure process." *Moeller v. Lien*, 25 Cal. App. 4th 822, 832 (1994) (citations

2     omitted).

3           Bank of America and Fannie Mae purchased the Property at the June 15, 2015

4     foreclosure sale, not as a bona fide third-party purchaser, but as the beneficiary under

5     the Note. (*See* TAC Ex. H (ECF No. 49-7) (providing a copy of the 11/17/2014

6     Assignment of Deed of Trust to Fannie Mae by Bank of America as "Attorney in Fact");

7     Def.'s RJN Ex. 14 at 45 (providing the same).) Therefore, the presumption in favor of

8     finality for a bona fide purchaser does not apply. *See Little v. Cfs Serv. Corp.*, 188 Cal.

9     App. 3d 1354, 1359 (1987) (explaining how a sale is more easily overcome and set

10     aside where the property is not purchased by a bona fide third-party to the note but

11     the beneficiary to the note instead); *also* 5 Miller and Starr § 13:255 ("The statutory

12     presumption . . . only operates in favor of a bona fide purchaser and is not applicable

13     when the property is purchased by the beneficiary at the foreclosure sale.").

14           Finally, by statute, the Trustee's Deed Upon Sale became *retroactively* final as

15     of 8:00 AM on Monday June 15, 2015. *See* Cal. Civ. Code § 2924h(c) ("For the

16     purposes of this subdivision, the trustee's sale shall be deemed final upon the

17     acceptance of the last and highest bid, and shall be deemed perfected as of 8 a.m. on

18     the actual date if the trustee's deed is recorded within 21 calendar days after the

19     sale . . . ."). However, the deed was not conclusively final on June 15, 2015; it was not

20     recorded until Friday, June 26, 2015. (*See* TAC Ex. H; Def.'s RJN Ex. 10.) *See also*

21     *Moeller*, 25 Cal. App. 4th at 832. Plaintiff's counsel tried communicating with

22     Defendant's in-house counsel and other attorneys on Wednesday, June 23, 2015, and

23     Thursday, June 25, 2015, trying to inform them of Plaintiff's concerns with various

24     charges and the propriety of the foreclosure process. (*See* Pl.'s Opp'n at 12

25     ("Defendants sold the home based on an amount that was not valid and Plaintiff did

26     not owe."); Pl.'s Resp. to Def.'s Special Interrog. Nos. 2, 12–13, 19, 25.; Pl.'s Opp'n Ex.

27     2.) Despite these communications, Fannie Mae recorded its deed upon sale on

28     Friday, June 26, 2015. Therefore, Plaintiff provides evidence showing that it notified

relevant parties of procedural issues with the foreclosure sale prior to the recording of the deed, thus providing evidence to overcome the conclusive presumption of finality.

Accordingly, Defendant's Motion for Summary Judgment regarding the thirteenth cause of action for wrongful foreclosure is DENIED.

## CONCLUSION

For the reasons stated above, the Court GRANTS in part and DENIES in part Defendant's Motion for Summary Judgment.  Specifically, the Court:

1.  DENIES Defendant's Motion for Summary Judgment on Plaintiff's claims under the California Homeowner Bill of Rights as to his first cause of action under California Civil Code section 2923.7 and his second cause of action under California Civil Code section 2924.10, but GRANTS Defendant's Motion for Summary Judgment on Plaintiff's third cause of action for liability under California Civil Code section 2924;

2.  GRANTS Defendant's Motion for Summary Judgment on Plaintiff's sixth claim for negligence;

3.  DENIES Defendant's Motion for Summary Judgment on Plaintiff's seventh claim under California's unfair competition law;

4.  DENIES Defendant's Motion for Summary Judgment on Plaintiff's eleventh claim for intentional infliction of emotional distress;

5.  GRANTS Defendant's Motion for Summary Judgment on Plaintiff's twelfth claim for negligent infliction of emotional distress; and

6.  DENIES Defendant's Motion for Summary Judgment on Plaintiff's thirteenth claim for wrongful foreclosure.

IT IS SO ORDERED.

Dated:   **June 16, 2023**

Hon. Daniel J. Calabretta
UNITED STATES DISTRICT JUDGE